TOWERS APARTMENTS, INC., demandante y apelada, *v.* GUILLERMO ALLENDE Y ONOFRE FALCÓN, demandados y apelantes; BORINQUEN TOWERS APARTMENTS, INC., demandante y apelada, *v.* RAMÓN CAL PITA, demandado y apelante.

*Números:* O-75-89,     *Resuelto:* 4 de noviembre de 1975
O-75-120

*Yusif Mafuz Blanco, Reinaldo Rodríguez Pagán, Wilfredo López Irizarry y Rosa E. Palou,* abogados del Departamento de Asuntos al Consumidor y de los apelantes; *Figueroa & Nassar,* abogados de la apelada.

SENTENCIA

Vistas las disposiciones de la Ley Nacional de Viviendas, *National Housing Act* (12 U.S.C.A. sec. 1713 *et seq.*) y la reglamentación aprobada al amparo de la misma (40 F.R. Secs. 403.8–403.10) y la Ley de Alquileres Razonables (17 L.P.R.A. sec. 181 *et seq.*) se confirman las sentencias de desahucio por falta de pago dictadas por el Tribunal Superior de Puerto Rico, Sala de San Juan en 29 de noviembre de 1974 contra los apelantes Onofre Falcón y Guillermo Allende y a favor de la apelada Borinquen Towers Apartments, Inc. Se revoca la sentencia de desahucio por la causal de expiración

de contrato dictada el 10 de enero de 1975 contra el apelante Ramón Cal Pita.

Así lo pronunció y manda el Tribunal y certifica el Señor Secretario. Los Jueces Asociados, Señores Rigau y Martín no intervienen. El Juez Presidente, Señor Trías Monge y los Jueces Asociados, Señores Dávila y Díaz Cruz concurren.

El Juez Asociado, Señor Negrón García emitió una opinión con la cual están conformes los Jueces Asociados, Señores Torres Rigual e Irizarry Yunqué.

(Fdo.) Angel G. Hermida
*Secretario*

—O—

Opinión del Juez Asociado, Señor Negrón García con la cual están conformes los Jueces Asociados, Señores Torres Rigual e Irizarry Yunqué.

San Juan, Puerto Rico, a 4 de noviembre de 1975

Nuestra filosofía judicial de ampliar el ámbito de protección de los consumidores y la ausencia de legislación federal o reglamentación conflictiva en ciertas áreas del alquiler de viviendas, nos lleva a resolver en los recursos de epígrafe, que la Ley Núm. 464 de 25 de abril de 1946, según enmendada, conocida como Ley de Alquileres Razonables (17 L.P.R.A. sec. 181 *et seq.*), como regla general, es parcialmente aplicable a edificios de apartamentos dedicados a alquiler construidos bajo los auspicios financieros de la antigua Administración Federal Sobre Hogares, *Federal Housing Administration* (FHA), denominada al presente Desarrollo Urbano y Vivienda, *Housing and Urban Development* (HUD) conforme la Ley Nacional de Viviendas, *National Housing Act* (12 U.S.C.A. sec. 1713 *et seq.*).

El Tribunal Superior, Sala de San Juan, concluyó de manera contraria al resolver que la ley Federal tiene "el

campo ocupado" (*preempted*) y excluye la legislación local, y consecuentemente decretó los desahucios solicitados por las demandantes apeladas—dueñas de dos edificios conocidos como Borinquen Tower Apartments y Tower Apartments—contra los demandados apelantes Guillermo Allende, Onofre Falcón y Ramón Cal Pita por las causales de falta de pago ([1]) y expiración del término de contrato.

No existe controversia en cuanto a los hechos y trámites esenciales que dan margen a la presente controversia. Al construirse los referidos edificios de apartamentos asegurando su financiamiento con la antigua FHA y construirse unas hipotecas sobre los mismos en garantía de un pagaré, su propietaria otorgó simultáneamente con dicha administración un documento conocido como *Acuerdo Reglamentario*, "Regulatory Agreement" estipulando un sinnúmero de detalles referentes a su administración, manejo, operación, fijación y variación de rentas, informes de estado financieros y otros. Este acuerdo está basado en la reglamentación entonces vigente, adoptada por el Secretario de la Vivienda según la autorización conferídale en la Sec. 211 de la citada ley (12 U.S.C.A. sec. 1715(b). ([2]) La fuente estatutaria que autoriza al Secretario a asegurar hipotecas y el ámbito de tal reglamentación en proyectos de vivienda de tipo multifamiliar está reconocida en la Sec. 207 (12 U.S.C.A. sec. 1713(b)(2)), que dispone:

"Cualquier otro deudor hipotecario aprobado por el Secretario que, hasta la terminación de las obligaciones del Secretario bajo el seguro y durante el período de tiempo en que el Secre-

---

([1]) Los demandados apelantes Allende y Falcón, consignaron ante el tribunal de instancia las cantidades de $1,161.39 y $701.40 respectivamente que correspondían a la diferencia entre el canon originalmente fijado y el posteriormente autorizado.

([2]) Dispone así:

"El Secretario está autorizado a adoptar las reglas y reglamentos que estimare necesarios en la implementación de las disposiciones de este subcapítulo." (Traducción nuestra.)

tario sea el dueño, tenedor, o reasegurador de la hipoteca, está regulado o restringido por el Secretario respecto a *rentas* o ventas, cargos, estructura de capital, réditos y método de operación a tal extremo y manera que provea *unas rentas razonables a los* inquilinos y un rédito razonable de la inversión del arrendador . . .

El aseguramiento de hipotecas bajo esta sección es con el propósito de facilitar particularmente la producción de alojamientos de alquiler, *mediante rentas razonables,* de diseño y tamaño familiar. Por lo tanto, en la implementación de esta sección, el Secretario está autorizado y encomendado a adoptar aquella acción, por reglas u otro modo, que canalice los beneficios del seguro de hipoteca aquí provisto primariamente a aquellos proyectos que provean adecuadamente a familias con niños, sobre los cuales se haya realizado todo esfuerzo para lograr *rentas moderadas.*" (Bastardillas nuestras.)

La reglamentación de la FHA en lo referente a solicitudes de aumento de rentas, está contenida en un Manual procesal administrativo que provee con lujo de detalles el trámite a seguirse, la documentación a presentarse y los criterios pertinentes aplicables. (³) Su lectura pone de manifiesto que la agencia federal intenta establecer un balance entre el rédito de la inversión del deudor hipotecario y el monto de canon de arrendamiento que deban pagar los inquilinos. Sin embargo, del lenguaje de su propia introducción se detecta el interés básico de proteger su seguro minimizando los riesgos del mismo en orden a su solvencia económica. "La acción rápida del Director de Oficina de Area (u Oficina Aseguradora) en la determinación y aprobación de las tarifas de rentas es de extrema importancia, ya que un ingreso adecuado y su uso prudente son esenciales al éxito de cualquier proyecto."

A tono con el diseño legislativo y administrativo expuesto, al concertar sus respectivos contratos de arrendamiento con la demandante apelada, los demandados apelantes

---

(³) 24 Code of Federal Regulations: "F.H.A. Rules and Regulations Subchapter D—Rental Housing Insurance."

reconocieron que el apartamento en cuestión estaba sujeto a una hipoteca asegurada por la FHA. ". . . y en su consecuencia el arrendamiento de dicho apartamiento y las acciones de todas clases que se deriven del mismo no se encuentran afectadas por la Ley de Alquileres Razonables de Puerto Rico." Igualmente firmaron un *addendum* al contrato que establece: "Queda claramente entendido que este apartamento forma parte de un edificio cuyas rentas están reglamentadas por la Administración Federal Sobre Hogares (FHA) y pueden variar de tiempo en tiempo. Por lo tanto, cualquier cambio en la renta será ejecutable y el arrendatario mediante la presente se compromete hacerla efectiva en la fecha en que el cambio sea efectuado por la FHA." (Traducción nuestra.)

A solicitud de la propietaria, para los años 1969, 1971 y 1974 la FHA aprobó nuevas tarifas de rentas aumentando las existentes por razón de haberse demostrado incremento en los gastos operacionales, las contribuciones y la energía eléctrica. Los apelantes Allende y Falcón se negaron a satisfacer la diferencia en canon dictándose finalmente la Sentencia en desahucio que nos ocupa. Al apelante Cal Pita se le negó la renovación del alquiler al expirar el primer año emitiéndose igual decreto de desahucio.

Nuestros pronunciamientos hace un cuarto de siglo en el caso de *Avila* v. *Tribunal de Distrito*, 68 D.P.R. 11, 17–18 (1948) continúan teniendo validez en casos como el presente:

"En ausencia de una prohibición específica en una ley Federal contra legislación local, el Gobierno insular puede ejercer poderes concurrentes aprobando, bajo su poder de policía, legislación que cubra la misma materia, siempre y cuando que ésta no esté tan íntimamente mezclada y relacionada con responsabilidades del gobierno nacional, que su propia naturaleza de por sí haga surgir la inferencia de que se trata de un asunto que compete exclusivamente al gobierno nacional. [Citas omitidas.]

El control de alquileres no es tan exclusivamente una responsabilidad nacional, que su materia como tal requiera que resolvamos que el Congreso, una vez legisla sobre ella, intenta ocupar

el campo exclusivamente, a pesar de que el estatuto Federal no prohibe específicamente un estatuto local sobre el mismo asunto." Véase además: *New York State Report of Social Services* v. *Dubline*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973).

El interés que predomina en la reglamentación federal ante nuestra consideración es puramente económico; de la solvencia o insolvencia del proyecto asegurado dependerá que se afecte el interés federal existente. La Ley Nacional de Viviendas no es un mecanismo de control de rentas. *Helmsley* v. *Borough of Fort Lee*, 362 F.Supp. 581, 590 (1973); *Stoneridge Apts., Co.* v. *Lindsay*, 303 F.Supp. 677, 680 (1969); *Choy* v. *Farragut Gardens*, 131 F.Supp. 609 (1955). Tampoco contiene disposiciones referentes a las causales y procedimientos de desahucios. No vemos como pueda existir conflicto sustancial entre la implementación de la ley federal y nuestra Ley de Alquileres Razonables. La cubierta de esta última es más amplia ya que cubre extremos tales como la vigencia del arrendamiento y las causas válidas para su terminación (desahucio) que están en armonía con la filosofía federal de proveer viviendas de alquiler adecuadas. En ese sentido, con toda deferencia, consideramos claramente distinguible y no controlable, las expresiones habidas en *Peñagarícano* v. *Allen Corporation*, 267 F.2d 550 (1959), en que la Corte del Primer Circuito de Boston resolvió que la Ley de Alquileres Razonables era inaplicable a vivienda tipo duplex construida bajo la Ley Nacional de Viviendas (12 U.S.C.A. sec. 1743).

De fácil percepción resulta comprender que en nuestra isla, irrespectivamente de los avances habidos y los esfuerzos gubernamentales de los últimos años, el problema de la vivienda adecuada y el control del alquiler subsiste como problema básico. Es innegable que, con ciertas variantes, las realidades que inspiraron nuestra Ley de Alquileres Razonables continúan al presente, lo cual exige continuada intervención gubernamental remedial y mecanismo de control de precio y otras condiciones. Tal legislación no sólo está

revestida de interés público, sino que recoge una filosofía de inestimable valor humano. Sea alquilada o propia, en esencia, la vivienda representa un santuario de privacidad para el disfrute familiar; al contrario, el desahucio representa una negativa de ese principio y ciertamente, en aquellos casos en que lamentablemente procede, un traslado forzoso y en ocasiones una experiencia traumática para los individuos envueltos.

La ley como instrumento de la justicia, ante problemas que atañen el bienestar general del pueblo—tales como la salud, seguridad y otros—no puede ser objeto de adjudicación en un vacío intelectual; tiene que basarse en conceptos contemporáneos de lo que es justo y equitativo. Nada nos impide que judicialmente reafirmemos el derecho a la vivienda como uno que trasciende la expresión inconclusa constitucional de un pueblo, para convertirlo en un derecho humano, canalizable a través del esfuerzo y la estructura democrática vigente sin sujeción a rectificaciones históricas.

El lenguaje de la ley federal es compatible y afín con nuestra ley local, aun cuando la primera en su reglamentación pone especial énfasis en el aspecto económico. No intenta cubrir áreas relativas al desahucio y a las causas para que el mismo proceda—ámbito que nuestra legislación minuciosamente contempla. Resolvemos que carece de valor jurídico la cláusula impuesta por la propietaria apelante a los demandados en el sentido de que la Ley de Alquileres Razonables no era de aplicación a la relación arrendaticia pactada.

En ausencia de pronunciamiento congresional que claramente excluya legislación estatal sobre el particular, la agencia federal a cargo del programa—HUD—en casos en que meramente su interés consiste en haber asegurado el financiamiento de un proyecto—como los que nos ocupan—nunca ha intentado ejercitar indiscriminadamente jurisdicción exclusiva sobre el aspecto del control del precio. Su más reciente declaración sobre este extremo está contenida en la regla-

mentación efectiva el 22 de octubre de 1975 que adiciona al Capítulo IV de su Reglamento, en las Secs. 403.1 a 403.6 (Federal Register, Vol. 40, No. 205, págs. 49318 a 49321). Estas disponen que únicamente dicho Departamento ejercitará jurisdicción exclusiva cuando considere que el interés económico del proyecto está en peligro por razón de la decisión de la autoridad local sobre control de renta o por una tardanza de ésta en emitir su decisión; y establece un procedimiento al efecto que puede culminar en que la autoridad federal asuma o niegue jurisdicción.

En virtud de lo expuesto, resolvemos que la Ley de Alquileres Razonables es aplicable a proyectos multifamiliares como los pertenecientes a la apelada en lo que respecta a las causales para el desahucio y demás trámites afines. En torno a la fijación de rentas máximas y aumentos, en ausencia de notificación por parte de HUD de que en determinado caso ejercerá jurisdicción exclusiva, la Administración de Servicios al Consumidor (ASERCO) tiene facultad concurrente y válida para entender en tales cambios conforme la reglamentación antes citada.

Debido a que al momento de fijarse el último aumento, no existía determinación al efecto y la HUD ejerció válida y exclusivamente sus poderes, los aumentos decretados hasta el presente son a nuestro juicio válidos. (⁴)

Las sentencias de desahucio por falta de pago dictadas contra Guillermo Allende y Onofre Falcón serán confirmadas. La sentencia contra Ramón Cal Pita, basada en haber expirado el término de arrendamiento, será revocada por aplicarse las disposiciones de prórroga obligatoria dispuesta en el artículo 12 de nuestra ley (17 L.P.R.A. sec. 192). Véase *Jenkins* v.

---

(⁴)No nos corresponde, como foro que interpreta nuestra ley, pronunciarnos respecto a si en dicho trámite los inquilinos debieron tener audiencia antes de que se fijara la renta correspondiente. Véase *Tenants Coun. of Tiber Island—Carrollsburg Sq.* v. *Lynn,* 497 F.2d 648 (1973) en que se denegó tal derecho.

*Allen Temple Development,* 192 S.E.2d 714 (1972) ; *McQueen* v. *Druker,* 317 F.Supp. 1122 (1970).