PONCE FEDERAL SAVINGS AND LOAN ASSOCIATION OF PUERTO RICO, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SECCIÓN PRIMERA DE SAN JUAN, recurrido.

*Número:* O-76-460          *Resuelto:* 21 de diciembre de 1976

*O'Neill & Borges* y *Felipe Sanabria Quiñones,* abogados de la recurrente; la Registradora compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El 4 de agosto de 1976, ante el Notario Felipe Sanabria Quiñones se otorgaron dos escrituras: la Núm. 96 mediante la cual se individualizó el Apartamento 101 del Condominio Vieques radicado en la calle del mismo nombre en el Condado, San Juan, que fue vendido a Richard E. Carroll y esposa; y la Núm. 97 en la que estos cónyuges compradores constituyeron hipoteca sobre el apartamento adquirido en garantía de un pagaré por $36,000.00 y responsabilidades subsidiarias a favor de la recurrente Ponce Federal Savings & Loan Association of Puerto Rico.

El mismo día 4 de agosto último los compradores Carroll comparecieron ante el Notario Jorge Busigó Cifre y otorgaron otra hipoteca voluntaria en garantía de un pagaré al portador por $5,897.20. Esta escritura se presentó en el Registro de la Propiedad (San Juan I) el 6 de agosto, dos días después de su otorgamiento. Al tomarla para despacho encontró la Registradora recurrida que la propiedad sobre la cual se constituía esta hipoteca no aparecía inscrita a favor de los esposos hipotecantes, y así lo notificó al presentante. Las dos escrituras Núms. 96 y 97 ante Sanabria Quiñones no fueron presentadas hasta el 19 de agosto, 15 días después de su otorgamiento.

Despejado el obstáculo de registro por la presentación del título de propiedad del deudor Carroll, formalizado en la escritura Núm. 96, la Registradora inscribió ésta, y a tenor

del "riguroso orden de presentación" (¹) inscribió primero la hipoteca de $5,897.20 y siguiendo a ésta la de $36,000.00 a favor de la recurrente Ponce Federal Savings & Loan Association. Esta ha recurrido pidiendo que se revoque la calificación hecha por la Registradora y que se anule el asiento preferente de la hipoteca por $5,897.20.

Toda vez que la Registradora no denegó ni suspendió la inscripción, sino que inscribió, hay que determinar si procede el recurso gubernativo. Sólo puede recurrirse gubernativamente contra las resoluciones de los Registradores cuando éstos deniegan o suspenden alguna inscripción, anotación o cancelación. Si no concurre alguno de estos motivos deberá desestimarse el recurso por falta de jurisdicción, sin perjuicio de los derechos que puedan asistir a las partes. *Jiménez* v. *Registrador,* (²) 62 D.P.R. 547, 548 (1943); Ley sobre Recursos Gubernativos de 1 de marzo de 1902, Sec. 1 (30 L.P.R.A. sec. 1771); *Banco de Ponce* v. *Registrador,* 58 D.P.R. 602 (1941); *González* v. *Registrador,* 75 D.P.R. 366, 369–370 (1953). No obstante, este Tribunal amplió el cauce del recurso gubernativo, extendiendo el remedio a los casos en que el Registrador "rehusa dar al documento todo su valor legal." (³) *Alvarez* v. *Registrador,* 29 D.P.R. 769, 771 (1921); *Pueblo* v. *Registrador,* 64 D.P.R. 130, 134 (1944). Para invocar nuestra jurisdicción bajo esta última premisa descansa

---

(¹) Sec. 17, Ley Núm. 3 de 2 de septiembre de 1955 (30 L.P.R.A. sec. 1764).

(²) En *Jiménez,* supra, como en el presente caso, solicitaba el recurrente que se anulara una inscripción y se practicara otra nueva, con lo cual pueden ser afectados derechos de partes.

(³) Concepto tomado del texto inglés de la Ley de Recursos Gubernativos de 1902 que en su Art. 1 dice: ". . . when any registrar of property refuses absolutely or provisionally to record or to give its full legal effect to any document. . . ." Hay alguna analogía entre este fundamento de recurso y el provisto por el Art. 112 del Reglamento Hipotecario Español "a efectos exclusivamente doctrinales aun cuando se hubieren inscrito los documentos calificados en virtud de subsanación de los defectos alegados en la nota del Registrador." Roca Sastre, *Derecho Hipotecario,* Tomo II, pág. 294, Sexta Ed. (1968).

la recurrente en dos argumentos: (i) Que la hipoteca por $5,897.20 que ingresó primero al Registro y fue inscrita con rango de primera carece de valor y eficacia a la luz de los Arts. 126 y 108 (5°) de la Ley Hipotecaria por cuanto el deudor Carroll no tenía derecho para constituirla según el Registro; y (ii) que la inscripción de dicho documento violó el principio de tracto sucesivo enunciado en el Art. 20 de la Ley y 224 del Reglamento (30 L.P.R.A. secs. 45 y 1209, respectivamente).

## I

Como correctamente señala la Registradora recurrida, de prevalecer la contención de la recurrente negando capacidad para hipotecar a quien es dueño sin título inscrito en el Registro de la Propiedad, [4] tampoco sería inscribible la hipoteca por $36,000.00 a favor de Ponce Federal Savings & Loan Association, pues los deudores Carroll constituyeron ambas hipotecas el 4 de agosto de 1976 cuando ni siquiera figuraba individualizado en el Registro el Apartamento 101 afecto a dichos gravámenes. Dice el Art. 126 de la Ley Hipotecaria que la hipoteca constituida por el que no tenga derecho para constituirla según el registro, no convalecerá, aunque el constituyente adquiera después dicho derecho. Y el Art. 108 (5°) dispone que no se podrá hipotecar el derecho real en cosas que, aun cuando se deban poseer en lo futuro, no estén aún inscritas a favor del que tenga el derecho a poseer. Estos artículos han sido derogados en España, por tener el carácter de preceptos substantivos fuera de lugar en la Ley Hipotecaria, que contravienen y limitan efectos del dominio prescritos en el Derecho Civil. La capacidad jurídica

---

[4] En la profusa compraventa de viviendas en Puerto Rico es práctica corriente, y enteramente legal, como se indica más adelante, constituir hipoteca en garantía del precio aplazado en el mismo acto en que se otorga el título de propiedad, sin esperar por la inscripción del dominio a favor del comprador hipotecante. La teoría de la recurrente impondría la supresión total del presente método de financiamiento de viviendas.

para constituir hipoteca se defiere principalmente por el Art. 138 de la Ley: "Son hipotecas voluntarias las convenidas entre partes o impuestas por disposición del dueño de los bienes sobre que se constituyan."; el Art. 139: "Sólo podrán constituir hipoteca voluntaria los que tengan la libre disposición de sus bienes, o en caso de no tenerla se hallen autorizados para ello con arreglo a las leyes."; y por el Art. 1756, inciso 2º del Código Civil: es requisito esencial del contrato de hipoteca que la cosa hipotecada pertenezca en propiedad al que la hipoteca. (31 L.P.R.A. sec. 5001 2º). Pero aun cuando regían en España los citados Arts. 126 y 108 (5º) de la Ley Hipotecaria, los tratadistas repudiaron su interpretación literal negándole toda autoridad para restringir la facultad para contratar, y específicamente, hipotecar, reglada por el Derecho Civil. Sobre el particular se expresaron Galindo y Escosura: *"Cómo ha de entenderse el art. 126 de la Ley.*—Nada tan sencillo, al parecer, como el principio sentado en el art. 126; y ha sido, sin embargo, motivo de muchas dudas y objeto de numerosas Resoluciones. Y éstas han reconocido como causa principal, el que a pesar de ser la constitución de hipoteca un acto emanado del dominio, parece que el art. 126 la hace depender de la inscripción. No dice que no convalecerá la hipoteca constituida por el que no tenga derecho para constituirla, aunque el constituyente adquiera después dicho derecho; sino la constituida por el que no tenga derecho para constituirla, *según el Registro.*

"En verdad, si el artículo se entiende literalmente, y se considera aislado, eso dice: pero como existen otros que han de armonizarse con éste, y como además su disposición, no explicada, se opondría a todos los principios de Derecho y aun a los que informan el sistema hipotecario, es indispensable limitar su alcance. La L. H. no es la que resuelve y determina la nulidad de los contratos; ni la falta a sus preceptos, como no sean repetición o confirmación del Derecho civil, puede

engendrarla. Limitada a recoger todos los datos necesarios para que el estado de la propiedad sea patente, a la forma en que han de hacerse constar, a los efectos que hacia terceros produce la omisión de estas circunstancias, no sienta reglas respecto a la validez de los contratos que han de inscribirse; y la calificación que de ellos haga el Registrador, se ha de fundar en las leyes civiles que los regulan. Si las circunstancias exigidas por la L. H. para inscribir, se cumplen, y la civil tiene por bueno el contrato, se inscribirá; pero si aquellas circunstancias no se llenan, aunque el contrato sea válido por la Ley civil, no se inscribirá. Sería, pues, una intrusión manifiesta en la Ley civil, si la Hipotecaria hubiese dispuesto, como han entendido algunos, que si constituye la hipoteca el que no tiene inscrito su dominio en el Registro, es ineficaz; con ineficacia tan absoluta, que la inscripción posterior del dominio no la convalidaba.

"Opónese también esta interpretación a lo dispuesto en el art. 20 de la Ley, fundamental en la materia, que dispone se suspenda la inscripción de un derecho constituido o transmitido por quien no aparezca dueño del inmueble, si no apareciese tampoco ser de otro, o se deniegue si esto apareciese; pero que no declara nula la constitución o transmisión, ni impide que subsanada la falta puramente hipotecaria, e inscrito el dominio del derecho, se inscriban aquéllas.

"No ha de estimarse, pues, que la inscripción es tan necesaria, que el dueño de una cosa no inscrita no pueda hipotecarla, siendo el contrato nulo e ininscribible por defecto insubsanable; sino que, si bien no podrá registrarse la hipoteca mientras no lo esté el dominio, inscribiéndose éste, no hay dificultad en inscribir la hipoteca." Galindo y Escosura, *Comentarios a la Legislación Hipotecaria de España,* Tomo 3, págs. 275–6, Ed. 1903. Concurren: Barrachina, *Derecho Hipotecario,* Tomo 3, págs. 53–54; Morell & Terry, *Legislación Hipotecaria,* Tomo 3, pág. 700 y ss., Segunda Edición.

## II

█ Sostiene la recurrente que por no constar, a la fecha de presentación de la hipoteca por $5,897.20, previamente inscrito o anotado el título de propiedad de los deudores Carroll, debió la Registradora denegar la inscripción de la hipoteca, según ordena el Art. 20 de la Ley Hipotecaria y no "esperar" a que un tercero presentara el documento que completara el tracto y viabilizara la inscripción. El argumento es teórico en extremo porque de denegar venía la Registradora obligada a tomar anotación preventiva a favor del tenedor del pagaré por 120 días y al presentarse la escritura de compraventa a favor de los Carroll se hubiere disuelto el obstáculo de registro al igual que ocurrió cuando dicho título de dominio fue presentado trece días después de la hipoteca. No puede concluirse que la recurrida demorara ex-profeso la calificación si para el 23 de agosto de 1976 ya había inscrito los tres documentos concernidos presentados los días 6 y 19 del mismo mes y año. Se cumplió con el principio de "primero en tiempo, primero en derecho". Según el Art. 17 de la Ley Hipotecaria, inscrito o anotado preventivamente en el Registro cualquier título traslativo del dominio o de la posesión de los inmuebles o de los derechos reales impuestos sobre los mismos, no podrá inscribirse o anotarse ningún otro de igual o anterior fecha por el cual se transmita o grave la propiedad del mismo inmueble o derecho real. Inscrito el dominio a favor de los deudores Carroll, el citado Art. 17 no impedía, la inscripción de la hipoteca que había llegado antes al Registro porque la prohibición se entiende limitada a los títulos que se opongan al presentado, anotado o inscrito, o sean incompatibles con el mismo, y en este caso, por el contrario dichos títulos son armónicos. *Riera* v. *Registrador de San Juan, Sec. 1ª,* 23 D.P.R. 540, 544–45 (1916) ; Morell y Terry, *Legislación Hipotecaria,* Tomo 2, pág. 232, Ed. 1927; Roca Sastre, *Derecho Hipotecario,* Tomo 2, págs. 154 y 161, *in fine* 169, Sexta Edición (1968). El principio de prioridad regis-

tral (*prior tempore potior iure*) impone al Registrador la obligación de despachar los títulos presentados por el riguroso orden de su presentación al Registro. Hay en este trámite un saludable grado de automatismo dictado por la cronología, supeditado, sin embargo, a la prueba depuradora de la calificación en la que se cumplen los principios de legalidad y tracto sucesivo.

No es materia a adjudicarse en el recurso. gubernativo si los deudores, que dentro del mecanismo de Registro obtuvieron rango de primera para la hipoteca menor a costa del crédito mayor de la financiadora Ponce Federal Savings & Loan Association, se han colocado en la posición prevista en las cláusulas tercera y décimoctava de la Escritura Núm. 97, ante el notario Lic. Sanabria Quiñones, que disponen vencimiento acelerado y ejecución para en caso de que dicha hipoteca no se inscriba con el rango convenido en la escritura de constitución del crédito.

El análisis de las cuestiones suscitadas nos lleva a la conclusión de que la Registradora actuó conforme a Derecho y no le restó valor legal a los documentos de la recurrente. *No procede el recurso gubernativo. Desestimado.*