BANCO DE SANTANDER DE PUERTO RICO, demandante y recurrido, *v.* DANIEL ROSARIO CIRINO, demandado y recurrido; CELESTINO ROSARIO MANSO, interventor y peticionario.

*Número:* CE-87-397 *Resuelto:* 29 de junio de 1990

592

594

596

*Luis E. Gandía Argüelles*, abogado del interventor y peticionario; *Andrés J. García-Arregui* y *Homero González López*, de *García-Arregui & Fullana*, abogado del Banco de Santander, recurrido; *Norma Cotti Cruz, Subprocuradora General*, y *Antonio Figueroa Rodríguez, Procurador General Auxiliar*, en Informe.

El Juez Asociado Señor Negrón García emitió la opinión del Tribunal.

Una palabra escueta, fría, despojada de su contexto vital, separada del ámbito humano y social que le da profundo y verdadero sentido puede resultar vacía, insustancial. A la palabra es necesario llenarla de su auténtico contenido esencial. La palabra —bien atendida y como instrumento difusivo— debe nombrar con exactitud y equidad su existencia propia.

Tal es el caso del término "inmueble". No siempre ni necesariamente ha de entenderse desde la impasible perspectiva de su definición gramatical. Más allá de su acepción jurídica, decir "inmueble" es decir finca, edificio, bienes raíces o, lo que es lo mismo, cosas, estructuras, que pueden construirse o destruirse, que pueden medirse y comerciarse.

Pero en el caso que nos ocupa, ese "inmueble" —y no queda otra conyuntura que recurrir a este término— es algo más que una locución verbal o escrita. Es techo, es vivienda, es centro de trabajo, es familia, es lugar donde se reúne y se ampara un grupo de seres humanos. Para una humilde familia de Piñones, rincón que pertenece a una isla de reducida extensión y acosada por problemas de sobrepoblación, falta de vivienda y desempleo, su "inmueble" no es meramente tierra, zinc, madera y cemento; "inmueble" es abrigo para escapar de las inclemencias de su vida pobre, es su pequeño y único territorio, su mundo entero, su absoluto Universo. Todo lo que la existencia les niega lo compensa ese mínimo y, a la vez, inconmensurable resguardo de su hogar.

Hay que revisar aquí, frente a esta circunstancia y a la luz de la verdadera justicia, el alcance y la eficacia de ese término. Hay

que incorporarle la connotación que nos permita pensar, analizar, decidir y actuar también conforme a una ley moral y humana que nos exima de un acto no sólo de escueta justicia, sino de *noble* justicia. Y lo más *noble y doblemente* justo que corresponde aquí es proteger. el derecho de los legítimos dueños de ese inmueble. Expongamos los hechos.

## I

El ingeniero químico Daniel Rosario Cirino celebró un contrato de préstamo (para el desarrollo de un artefacto comercial) con el Banco de Santander (Banco), el cual evidenció con un pagaré al portador por la suma principal de $50,000, intereses a razón de diecisiete por ciento (17%) anual hasta su pago total y $5,000 para gastos, costas y honorarios de abogado. Garantizó esta obligación con una hipoteca sobre un inmueble sito en el Barrio Torrecillas de Loíza.(1) El gravamen se hizo constar en la Escritura Núm. 52 otorgada en San Juan el 15 de octubre de 1982 ante el notario Juan M. Rivera González.

Como Rosario Cirino incumplió la obligación, el Banco declaró vencida la totalidad de la deuda y el 18 de noviembre de 1983 instó demanda de cobro de dinero y ejecución de hipoteca en el Tribunal Superior, Sala de Carolina. Rosario Cirino no compareció, y el 14 de noviembre de 1984 dicho tribunal dictó sentencia en rebeldía que declaró con lugar la demanda y ordenó la venta de la propiedad en pública subasta.

Iniciados los trámites de ejecución de la sentencia, Celestino Rosario Manso, de ochenta y dos (82) años, y quien vivía en el inmueble junto a su esposa, advino en conocimiento de la situación y presentó demanda de intervención. En síntesis, alegó ser el único y universal heredero de su madre María Elías Rosario París

---

(1) "'RUSTICA': Compuesta de cinco (5) cuerdas y cinco sextas (5⁄6) partes de otra. Radicada en el sitio conocido por 'Los Frailes' del Barrio de Torrecillas de la Municipalidad de Lo[í]za. Colindante por el Norte con la zona marítima, por el Sur con Luis Castro, antes Doña Romana Vizcarrondo, por el Oeste con Brígido Rosario París y al Este con Fel[í]cita Rosario París." Apéndice H, pág. 71.

y de su hermana Isabel Rosario, quienes fallecieron el 4 de febrero de 1935 y el 4 de noviembre de 1982, respectivamente; que aun así, su madre aparecía otorgando una escritura de compraventa ante el notario Rafael Rodríguez Álvarez, el 12 de marzo de 1982, mediante la cual vendía a Rosario Cirino la propiedad objeto de la ejecución y que su madre adquirió dicha propiedad mediante la *Escritura Núm. 133 de División de Comunidad Hereditaria otorgada el 1ro de septiembre de 1928* ante el notario Adrián Agosto Abadía. Expuso que dicha escritura, un mandamiento al Registrador de la Propiedad y una resolución dictada el 13 de septiembre de 1982, en el caso ventilado en el Tribunal Superior, Sala de Carolina (Civil Núm. 82-2600 sobre información *Ad Perpetuam Rei Memoriam*),[2] se presentaron en el Registro de la Propiedad el 16 de septiembre de 1982. La finca en cuestión (Núm. 8110) se inscribió a nombre de María Elías Rosario París el 20 de septiembre de 1982. Sostuvo, además, que la alegada venta realizada por su madre cuarentisiete (47) años después de su fallecimiento, por razones obvias, era fraudulenta y carecía de validez. Pidió que se declarase nula, e igual pronunciamiento solicitó con respecto a todas las transacciones posteriores fundadas en dicho contrato, incluso la hipoteca.

Alegó, además, que al momento del otorgamiento de la escritura de hipoteca, el demandado recurrido Rosario Cirino no figuraba como titular registral porque todavía no había presentado la escritura de compraventa mediante la cual alegadamente adquirió la propiedad que, en tales circunstancias, no procedía en derecho catalogar al Banco como tercero registral.

---

(2) Para inscribir el derecho de propiedad de Doña María Elías Rosario París se efectuó un trámite de información *Ad Perpetuam Rei Memoriam* de la Escritura Núm. 133, otorgada en San Juan el 1ro de septiembre de 1928 ante el notario Adrián Agosto Abadía (Civil Núm. 82-2600). En este procedimiento, Daniel Rosario Cirino compareció como peticionario ante el Tribunal Superior, Sala de Carolina (Hon. Roberto Bird Hofmann, Juez). Alegó que el inmueble no se había inscrito a favor de Doña María Elías Rosario París porque no se había obtenido una copia certificada de la Escritura de División de Comunidad Hereditaria por no encontrarse el Protocolo del notario autorizante correspondiente a 1928 en el Archivo de Protocolos de Puerto Rico. Incluyó una copia simple de la escritura y le solicitó al tribunal que hiciera la correspondiente determinación de autenticidad.

A tono con esas alegaciones, el interventor y peticionario Rosario Manso solicitó que se dejara sin efecto la Sentencia de 14 de noviembre de 1984, que se anularan las escrituras de compraventa de 12 de mayo de 1982 y de constitución de hipoteca de 15 de octubre de 1982, y sus correspondientes inscripciones registrales, que se le denegara al Banco la condición de tercero registral, que se le declarara legítimo propietario del inmueble, que se ordenara la inscripción a su nombre, y que se fijaran las responsabilidades correspondientes.

En su réplica el Banco alegó, como defensa afirmativa, que el demandado recurrido Rosario Cirino era tercero hipotecario porque adquirió de la madre del interventor y peticionario cuando ésta aparecía como titular registral. Alegó que su estudio de título así lo acreditaba y, aun cuando el título —Escritura de Compraventa— no se hubiera presentado en el Registro de la Propiedad, tenía y debía extendérsele la protección. A modo de paréntesis, es pertinente resaltar que el Banco admitió que al 15 de octubre de 1982 —fecha en que se otorga la escritura de hipoteca— el demandado recurrido Rosario Cirino no había presentado su alegado título de la propiedad brindada en garantía. En síntesis, el Banco sostuvo que su deudor hipotecario Rosario Cirino era tercero registral y esa condición le era extensible. En virtud de todas esas alegaciones, el 29 de enero de 1987 el interventor y peticionario Rosario Manso solicitó sentencia a su favor sobre la titularidad reclamada.

El ilustrado tribunal de instancia (Hon. Gilberto Gierbolini, Juez), el 23 de enero de 1987, dictó sentencia y reconoció el carácter de tercero registral del Banco, así como la legitimidad de la hipoteca inscrita a su favor. Nada proveyó en cuanto al reclamo del interventor y peticionario Rosario Manso para que se declarara nula la inscripción de transferencia del dominio sobre la finca. Por el contrario, ordenó la continuación de los procedimientos de ejecución de la sentencia dictada en rebeldía contra el demandado recurrido Rosario Cirino. Las solicitudes de reconsideración y relevo de sentencia del interventor Rosario Manso no fueron acogidas.

Inconforme con esa decisión, Rosario Manso recurrió ante nos. Por vía de reconsideración, mediante orden de mostrar causa, revocamos.

## II

■ Los hechos expuestos nos enfrentan a una situación de clara discrepancia entre los términos de los asientos del Registro de la Propiedad y la realidad jurídica extrarregistral. Rosario Cirino, titular registral, nunca adquirió legalmente el dominio de la finca que es objeto de la ejecución de sentencia. Ello es así porque en el contrato de compraventa no concurrieron todos los requisitos que exige el Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391. Este es el típico contrato fraudulento donde el dueño del inmueble no presta el consentimiento para la enajenación.(3) *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172, 186 (1985). Nulo radicalmente el contrato, el interventor y peticionario Rosario Manso, quien lo adquirió por herencia, es su legítimo dueño.

Ante esta situación, el acreedor hipotecario sólo puede prevalecer si demuestra que le protege la fe pública registral. Veamos.

■ Nuestro ordenamiento jurídico inmobiliario, acorde con la tradición española, integra el principio de la fe pública registral. De esta manera quedan protegidos los terceros que por negocio jurídico válido adquieran confiando en el contenido del Registro de la Propiedad. Sobre este particular, el Art. 105 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria), 30 L.P.R.A. sec. 2355, dispone:

---

(3) Con vista a los hechos alegados en este recurso en relación con el otorgamiento de la Escritura Núm. 3 de 12 de marzo de 1982 ante el notario Rafael Rodríguez Álvarez, ordenamos al Procurador General que investigara. Debía investigar también la Escritura Núm. 2 de 12 de marzo de 1982 otorgada ante dicho notario, que era motivo de controversia en la sentencia sumaria parcial sobre titularidad emitida por el Tribunal Superior, Sala de Carolina, en el caso de *Roig Commercial Bank, demandante v. Daniel Rosario Cirino, demandado, Antonio Rosario Romero, et als, interventores*, Civil Núm. 83-2014(E). El 2 de noviembre de 1987 el Procurador General rindió su informe y le ordenamos la formulación de querella disciplinaria contra el abogado Rodríguez Álvarez.

A pesar que la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, ni altera las relaciones jurídicas de quienes intervengan como partes en dichos actos o contratos, *el tercero que de buena fe y a título oneroso adquiera válidamente algún derecho de persona que en el Registro aparezca con facultad para transmitirlo* será mantenido en su adquisición, una vez haya inscrito su derecho, cuando por cualquier razón resulte inexacto el Registro, bien sea que se rescinda, resuelva o anule el título del otorgante en virtud de causas que no resulten clara y expresamente del propio Registro, o que existen sobre la finca acciones o títulos de dominio o de otros derechos reales que no estén debidamente inscritos.

Al respecto ha de entenderse por Registro los asientos relativos a una finca o derecho, no extinguidos según lo dispuesto en la sec. 2451 de este título, que se refieran a cargas y gravámenes o a derechos que no sean el que transfiere o grava, además del asiento que publica el derecho del trasmitente.

La buena fe del tercero se presume siempre mientras no se pruebe que al adquirir conocía la falta de exactitud del Registro.

El adquirente a título gratuito sólo gozará de la protección registral que corresponde a sus causantes o transferentes.

En ningún caso afectarán a tercero los derechos meramente mencionados o la indebida constancia de obligaciones.

■ La figura del tercero registral tiene un objetivo funda-mental: proteger a los acreedores y dueños del capital financie-ro.(4) Surge en un momento histórico en que todavía el ordena-miento no había elevado a principio fundamental o categoría

---

(4) "Si hemos logrado clasificar los hechos bajo determinadas figuras jurídicas es preciso identificar entonces a favor de cuál interés jurídico económico ha sido diseñada la norma. Hay algunos cuerpos legales que han sido promulgados para proteger abierta-mente a un sector.

"Así la Ley Hipotecaria, por ejemplo, se aprueba para garantizar la seguridad de las inversiones del capitalista financiero, conocido como el acreedor hipotecario, a tal punto que cuando surgen conflictos entre el titular legítimo de un terreno dado en garantía hipotecaria y el acreedor hipotecario, [e]ste último prevalecerá sobre el dueño legítimo, permitiéndole la ley que ejecute el bien hipotecado, lo venda en pública subasta al mejor postor y con el producto de la venta cobre su inversión, aunque quien lo hubiese dado en garantía no fuera su dueño legítimo y aunque el dueño legítimo no hubiese recibido ni un solo centavo del préstamo garantizado con la propiedad. Esta es la esencia de la protección al llamado 'tercero registral' encarnada en el artículo 34 de la Ley Hipotecaria de 1893, recogida en el vigente artículo 105 de la ley de 1979." (Escolio omitido.) M.J. Godreau Robles, *Un esquema para el análisis de problemas de derecho civil patrimonial*, LV Rev. Jur. U.P.R. 9, 39 (1986).

moral el derecho a la vivienda,[5] en países sin experiencia constitucional ni garantías al disfrute de la propiedad como las que conocemos hoy.

■ En *Housing Investment Corp. v. Luna*, 112 D.P.R. 173, 175 (1982), señalamos que la Ley Hipotecaria cumple propósitos de valor social y fomenta la adquisición de viviendas. Hoy reconocemos la necesidad de evitar que se convierta en un instrumento de despojo que derrote ese valor.

■ El interventor y peticionario Rosario Manso nos solicita que evaluemos la constitucionalidad del Art. 105 de la Ley Hipotecaria, *supra*. No es necesario. Es norma que los tribunales no juzgarán una cuestión constitucional, aunque se haya sometido propiamente en los autos, si existe un fundamento de otra índole que permita su solución en armonía con los mejores fines de la justicia. *Molina v. C.R.U.V.*, 114 D.P.R. 295, 297 (1983); *Mari Bras v. Alcaide*, 100 D.P.R. 506, 513 (1972); *Pueblo ex rel. M.G.G.*, 99 D.P.R. 925, 927 (1971).

## III

■ Como puede observarse, el Art. 105 de la Ley Hipotecaria, *supra*, le impone varios requisitos a aquellos que reclamen la protección del Registro de la Propiedad. Los requisitos son susceptibles de acuñarse en la máxima siguiente: deberá ser un *tercero civil que de buena fe y a título oneroso, en un negocio intervivos válido, adquiera un derecho real inmobiliario inscrito*

---

(5) El reconocimiento del derecho a la vivienda en la malograda Sec. 20 de la Constitución del Estado Libre Asociado fue objeto de las siguientes expresiones en la opinión *concurrente* emitida en *Towers Apartments v. Allende*, 104 D.P.R. 327, 333 (1975):

"La ley como instrumento de la justicia, ante problemas que atañen el bienestar general del pueblo —tales como la salud, seguridad y otros— no puede ser objeto de adjudicación en un vacío intelectual; tiene que basarse en conceptos contemporáneos de lo que es justo y equitativo. Nada nos impide que judicialmente reafirmemos el derecho a la vivienda como uno que trasciende la expresión inconclusa constitucional de un pueblo, para convertirlo en un derecho humano, canalizable a través del esfuerzo y la estructura democrática vigente sin sujeción a rectificaciones históricas."

Véanse, además: J. Trías Monge, *Historia Constitucional de Puerto Rico*, Río Piedras, Ed. U.P.R., 1982, Vol. III, págs. 209–212; Godreau Robles, *supra*.

*de persona que en el Registro de la Propiedad aparezca con facultades para transmitirle, en función de un registro inexacto, sin que consten clara y expresamente las causas de la inexactitud ni concurra alguna de las excepciones a la aplicación de la fe pública registral y que, a su vez, haya inscrito su adquisición.* Desglosémoslos sucintamente:

## 1. *Tercero civil*

 De acuerdo con el Código Civil, el concepto *tercero* es incompatible con el concepto *parte contractual* o, dicho de otra manera, la persona del tercero es *la que no es parte* en el contrato.[6] El Prof. Herminio M. Brau Del Toro define el tercero como la "[p]ersona que no es parte (o heredero de éstos) en un acto o contrato y que ejercita derechos adquiridos de buena fe que están en conflicto con quienes intervinieron en el acto o contrato". H.M. Brau del Toro, *Apuntes para un curso sobre el estado del derecho inmobiliario registral puertorriqueño bajo la Ley Hipotecaria de 1983*, 48 Rev. Jur. U.P.R. 113, 355 (1979). Véase, además, D. Martínez Irizarry, *El principio de fe pública registral en Puerto Rico*, 28 Rev. C. Abo. P.R. 719 (1968).

## 2. *Adquirente*

 No basta ser tercero simple, tiene que ser un *tercer adquirente*. Roca Sastre lo define como "el que subentra en virtud de negocio jurídico en el derecho de su autor o transferente y, por tanto, en una relación jurídica de éste, singularmente considerada, y, por ello, es *causahabiente del mismo* (*causam habet ab alio*), pero entre vivos". R.M. Roca Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. I, pág. 608. Apunta, además, que "ha de ser una adquisición derivativa y no originaria. De ahí que no son terceros adquirentes los que adquieran la

---

[6] Esta idea puede apreciarse en algunas disposiciones del Código Civil en materia de contratos. Así, por ejemplo, el Art. 1209 de dicho cuerpo, 31 L.P.R.A. sec. 3374, dispone *in initio*: "Los contratos sólo producen efecto entre las *partes* que los otorgan y sus herederos . . . ." (Énfasis suplido.) Este mismo artículo se refiere a *tercero* con relación a cuando contenga alguna disposición a su favor.

propiedad por ocupación, accesión, usucapión, expropiación (salvo convenio inicial, y no en la fijación del importe de la indemnización), confiscación, etc.". Íd., pág. 608 n. 1.

### 3. *De un derecho real inmobiliario inscrito*

Es necesario aclarar que el tercero hipotecario no es perfecto sinónimo del tercero adquirente civil. "El tercero hipotecario es un *tercer adquirente por negocio jurídico de un derecho real inmobiliario inscrito*. Adquirir por negocio jurídico es circunstancia común que asimila al tercero hipotecario con el tercer adquirente civil o general, pero aquél sólo puede ser un adquirente de *derecho real inmobiliario inscrito* y, por tanto, relativo a *finca inmatriculada* en el Registro, mientras que el segundo es indiferente que lo que adquiera sea un derecho real inmobiliario inscrito o no inscrito, o un bien mueble o un derecho personal o de crédito." (Énfasis en el original.) Roca Sastre, *op. cit.*, pág. 618.

### 4. *De buena fe*

Se ha postulado que la buena fe exigida aquí no es equivalente al principio de honradez o lealtad consagrado en el Código Civil. El Art. 105 de la Ley Hipotecaria, *supra*, exige una buena fe de tipo subjetiva, psicológica e intelectiva. Roca Sastre, *op. cit.*, pág. 648, la resume como *"el desconocimiento*, por parte del tercer adquirente, de la inexactitud del Registro". No obstante, en nuestro ordenamiento este concepto debe verse en consonancia con lo expresado en *Pascual v. Fernández Sierra*, 108 D.P.R. 426, 434–436 (1979); *Sánchez v. Colón*, 97 D.P.R. 493, 497 (1969), y *Mundo v. Fúster*, 87 D.P.R. 363, 376 (1963). Véanse, además: *Jordán-Rojas v. Padró-González*, 103 D.P.R. 813, 820–821 (1975), y *García Larrinua v. Lichtig*, 118 D.P.R. 120 (1986), donde expresamos que no se pueden desvincular los principios generales del derecho hipotecario de la buena fe en la contratación. Contrario a la doctrina mayoritaria española, nues-

tra jurisprudencia ha incorporado un elemento de diligencia.(7) Como Vallet De Goytisolo citado por Lacruz Berdejo, creemos "que el ordenamiento hoy vigente, impone al tercero, para ser de buena fe, cierta obligación de diligencia, por cuanto, con arreglo al art. 36 [de la Ley Hipotecaria española], para demostrar la mala fe de un adquirente basta probar que conoció la posesión de hecho de la finca, a título de dueño, por persona distinta de su transmitente, o que tuvo *medios racionales y motivos suficientes* para conocerla". A lo que Lacruz Berdejo añade: "en el propio concepto de la buena fe va ínsito siempre, en correspondencia con su fundamento ético y su condición de regla del comportamiento humano, un mínimo grado de diligencia." J.L. Lacruz Berdejo, *Derecho Inmobiliario Registral*, Barcelona, Librería Bosch, 1968, págs. 225–226.

---

(7) "El contenido de la buena fe más conocido es el que encontramos en los derechos reales vía los artículos 363 y 1850 y lo establecido respecto al tercero registral. Con estas normas se protege a los titulares de dominio y a los que suplen el capital. La buena fe no se orienta aquí a la protección de deberes de lealtad, por ejemplo, de una persona frente a otra determinada, sino a garantizarle a los titulares que el ordenamiento sancionará a quienes adquieran bienes de personas sobre las cuales pueda haber sospechas respecto a su facultad para transferirlos. En lo que respecta a la figura del tercero registral, cuyo arquetipo es el capitalista financiero, y para quien se diseña primordialmente el sistema registral, el concepto de la buena fe se orienta a garantizarle a éste que la apariencia (bautizada *fe* pública registral) que generan las constancias del Registro son superiores a la realidad de la titularidad. Así, el efecto del artículo 105 de la vigente Ley Hipotecaria hace que quien ha inscrito su derecho real confiando de buena fe en las constancias del Registro, quede protegido en la adquisición de los derechos que de allí emanan aunque quien se los transfiera no sea el dueño legítimo del bien. Realizado el estudio de título en el Registro, aquél a favor de quien se constituyó, digamos una hipoteca, prevalecerá, a[u]n frente al dueño legítimo, si de los libros registrales aparecía que el hipotecante todavía figuraba como el dueño de la propiedad, siempre y cuando no hubiese llegado a su conocimiento alguna otra información que pusiera en duda tal titularidad registral. El concepto de la buena fe registral se define así por nuestra jurisprudencia, siguiendo a Roca Sastre, como '. . . el *desconocimiento* por el tercer adquirente de la *verdadera situación jurídica* del derecho adquirido, en la parte no reflejada exacta o íntegramente en el Registro. Es la *ignorancia* de la *inexactitud registral*, entendida ésta en *sentido amplio.*'
"En estos artículos y casos la buena fe se define en términos psicológicos: es la creencia o la ignorancia excusable respecto a la titularidad del que nos transfiere y a la legalidad del negocio, lo decisivo. Por eso se le ha llamado la *buena fe subjetiva*. Sin embargo, *aunque aquí la referencia sea a un estado psicológico, quien invoca esta buena fe tiene que probar que fue diligente, lo cual presupone necesariamente un estánda[r] objetivo de comportamiento*." (Citas omitidas, énfasis suplido y en el original.) M.J. Godreau Robles, *Lealtad y Buena Fe Contractual*, 58 Rev. Jur. U.P.R. 367, 370–372 (1989).

■ Con el requisito de buena fe sólo tiene que cumplir el tercer *adquirente* y no el transferente. Se requiere en el momento en que, de acuerdo con el Código Civil, "queda concluso el negocio jurídico de adquisición por el tercero". (Énfasis suprimido.) Roca Sastre, *op. cit.*, pág. 695.

■ El propio Art. 105 de la Ley Hipotecaria, *supra*, dispone que se presume la buena fe del tercer adquirente. Como presunción legal *iuris tantum*, el impugnador tiene la carga de probar la mala fe del adquirente.

. . . La presunción legal de buena fe, por su carácter *iuris tantum*, es enervable, y para esto y asimismo conseguir se declare que el tercer adquirente *procedió de mala fe*, ha de resultar *probado* que este tercero *conoció indudablemente* al adquirir, que el Registro era inexacto, en el sentido amplio antes indicado.

El planteamiento de este caso entraña resolver una *cuestión de hecho* cuya apreciación y decisión corresponde a los *Tribunales de instancia*, y sólo excepcionalmente puede alcanzar las alturas de la *casación*. Roca Sastre, *op. cit.*, pág. 708.

## 5. *A título oneroso*

■ Este requisito exige que la adquisición se haya realizado mediante un negocio jurídico bilateral a través de contraprestaciones recíprocas. La definición excluye a los donatarios; y la determinación de si el negocio fue oneroso o gratuito deberá hacerse de acuerdo con el derecho civil puro. Roca Sastre, *op. cit.*, pág. 720. De ese modo, el cuarto párrafo del Art. 105 de la Ley Hipotecaria, *supra*, dispone que "[e]l adquirente a título gratuito sólo gozará de la protección registral que corresponde a sus causantes o transferentes".

## 6. *En un negocio intervivos válido*

■ El negocio de adquisición tiene que ser válido de acuerdo con el Código Civil. Debe cumplir con los requisitos de objeto, consentimiento, causa y capacidad de las partes.

**7.** *De persona que en el Registro de la Propiedad aparezca con facultades para transmitirle*

 Quien alegue ser tercero hipotecario debe haber adquirido del titular registral o de su representante. "Esta es la razón por la cual se está dando esta protección excepcional; porque se trata de una persona que confió en esa constancia, adquirió de esa persona y cumplió con todos los demás requisitos, entonces está protegido por el Registro, no importa cuál fuera la verdadera situación extra[r]registral." D. Martínez Irizarry, *Los principios hipotecarios bajo la nueva legislación en Puerto Rico*, 50 Rev. Jur. U.P.R. 195, 201 (1981). Sobre este aspecto, Roca Sastre, *op. cit.*, pág. 724, señala que "presupone que al tiempo de la adquisición por el tercero ya ha de aparecer del Registro como titular del derecho enajenado, aunque no conste practicada la inscripción a su favor [del transferente] pero sí presentado su título adquisitivo y que éste llegue a inscribirse". Véanse, además: *Zalduondo v. Iturregui*, 83 D.P.R. 1, 35 (1961); *Monserrate v. Lopés*, 80 D.P.R. 491, 503 (1958); *Pérez v. Cancel*, 76 D.P.R. 667, 676 (1954); *Olmedo v. Balbín*, 69 D.P.R. 588, 592 (1949); *Lizardi v. Caballero*, 65 D.P.R. 83, 89 (1945).

**8.** *Adquisición en función de un registro inexacto*

 El registro es inexacto cuando está en desacuerdo con la realidad jurídica extrarregistral en cuanto a los derechos inscribibles. Otra vez Roca Sastre, *op. cit.*, pág. 733, nos comenta: "[E]l contenido del Registro puede ser inexacto: por error cometido al practicar los asientos, por no haber tenido acceso registral algún título o relación jurídica registrable, por no existir el derecho o titularidad registrados debido a falsedad, nulidad u otro defecto del título inscrito o haber quedado anulado, resuelto, rescindido o revocado el derecho o el título registrado o inscrito, por haberse modificado o destruido la eficacia de un crédito hipotecario, y por cualquier otra análoga causa."

*9. En el Registro de la Propiedad no constaban clara y expresamente las causas de la inexactitud registral*

█ Para comprender este requisito es necesario que nos remitamos a la definición de *registro* del propio Art. 105 de la Ley Hipotecaria, *supra*,(8) la cual señala que *registro* son "los asientos relativos a una finca o derecho, no extinguidos según lo dispuesto en la sec. 2451 de este título, [por su cancelación, caducidad o conversión] que se refieran a cargas y gravámenes o a derechos que no sean el que transfiere o grava, además del asiento que publica el derecho del trasmitente".

*10. Que no concurra alguna de las excepciones a la aplicación de la fe pública registral*

█ La propia Ley Hipotecaria, por consideraciones especiales, limita en algunas ocasiones la plena eficacia de la fe pública registral. En ciertos casos le niega al tercero hipotecario definitiva e indefinidamente la protección de la fe pública del Registro de la Propiedad y, en otras ocasiones, la suspende temporeramente.

*11. Inscripción del derecho o título adquisitivo*

█ En la doctrina existen discrepancias en cuanto al momento en que se inician los efectos protectores del Registro de la Propiedad. Algunos tratadistas sostienen que es desde que el tercer adquirente logra la inscripción de su título, mientras que Roca Sastre, *op. cit.*, pág. 730, es del criterio que la función protectora se retrotrae al tiempo en que tuvo lugar el acto adquisitivo.

## IV

Al aplicar esta normativa al caso de autos, es forzoso concluir que el acreedor hipotecario, el Banco, no está protegido por la fe

---

(8) La Ley Núm. 143 de 14 de junio de 1980 enmendó el Art. 105 de la Ley Hipotecaria y del Registro de la Propiedad de 1979 (30 L.P.R.A. sec. 2355), a los efectos de cambiar "causas que no resulten claramente del propio Registro" a "causas que no resulten clara y expresamente del propio Registro".

pública registral. Definitivamente, no concurren todos los requisitos y las circunstancias antes discutidas. Veamos.

*Primero*, el Banco no puede cobijarse en la supuesta condición de tercero registral del deudor. Como hemos demostrado, Rosario Cirino fue parte en el negocio impugnado, lo que lo descualifica para la protección registral.

■ *Segundo*, el Banco no adquirió el derecho del titular registral. Al momento de otorgarse la Escritura de Constitución de Hipoteca Núm. 52 de 15 de octubre de 1982, la propiedad aparecía inscrita a nombre de María E. Rosario París. "Es doctrina consistentemente reiterada que no es tercero hipotecario aqu[e]l que ha adquirido título de persona que, a la fecha de su otorgamiento, no aparece en el Registro con derecho para otorgarlo." *Fuentes v. Sucn. Fuentes*, 94 D.P.R. 588, 593 esc. 4 (1967). Véanse, además: *Zalduondo v. Iturregui*, supra, pág. 35 esc. 22; *Monserrate v. Lopés*, supra; *Olmedo v. Balbín*, supra. La naturaleza constitutiva de la hipoteca no altera esta norma. Debe atenderse al momento en que se verificó el contrato de hipoteca y no al de su presentación en el Registro de la Propiedad. Esta doctrina está en armonía con la apreciación de Roca Sastre, *op. cit.*, pág. 724, contraria a la posición de Sanz, Molina Ravello y otros autores, para quienes lo importante es que al tiempo de inscribirse la adquisición del tercero conste inscrito el derecho correspondiente a favor del transmitente.

■ El foro de instancia se apoyó en unas expresiones vertidas en *Ponce Federal Savings v. Registrador*, 105 D.P.R. 486 (1976). Allí reiteramos la capacidad para hipotecar del dueño sin título inscrito en el Registro de la Propiedad en el contexto siguiente:

> En la profusa compraventa de viviendas en Puerto Rico es práctica corriente, y enteramente legal, como se indica más adelante, constituir hipoteca en garantía del precio aplazado en el mismo acto en que se otorga el título de propiedad, sin esperar por la inscripción del dominio a favor del comprador hipotecante. La teoría de la recurrente impondría la supresión total del presente

método de financiamiento de viviendas. *Ponce Federal Savings v. Registrador*, supra, pág. 489 esc. 4.

■ Sin embargo, no tomó en consideración las circunstancias peculiares que propiciaron ese pronunciamiento, así como otras cualificaciones posteriores de este Tribunal.(9) No debió perder de perspectiva que *Ponce Federal Savings v. Registrador*, supra, se decidió ante una situación fáctica que exigía discutir el asunto de la facultad del dueño sin título inscrito para gravar sus bienes. Empero, no enfrentábamos el problema de la protección que puede ofrecer el Registro de la Propiedad en dicho ámbito.

■ Es necesario destacar que en el caso de autos no nos confrontamos con el típico negocio de financiamiento de viviendas, donde el dueño y titular registral del inmueble comparece como vendedor *en el mismo acto* en que el comprador y el acreedor hipotecario otorgan la escritura de hipoteca. Aunque la compraventa y la hipoteca son dos negocios diferentes, pueden otorgarse unitariamente. Aquí, por el contrario, el financiamiento, con propósitos industriales, fue tramitado siete (7) meses *después* del negocio de compraventa. De hecho, la propia escritura de *compraventa* (Núm. 3 de 12 de marzo de 1982) expresaba que el inmueble *no estaba inscrito en el Registro de la Propiedad.* Cuando posteriormente se otorgó la escritura de *hipoteca*, la finca *no* estaba inscrita a nombre de Rosario Cirino. Es obvio, pues, que el Banco "no podía depender simplemente de la buena fe que privadamente pudo inspirarle su trasmitente que no se había ocupado o demoraba inscribir oportunamente su título y que con ello evitaba una publicidad que podía perjudicarle por lo que debe sufrir las consecuencias de sus propios actos". *Zalduondo v. Iturregui*, supra, pág. 38. De hecho, el Banco tuvo que esperar aproximadamente siete (7) meses para registrar la hipoteca, el

---

(9) "Empezaremos por recordar que *Ponce Federal Savings v. Registrador*, 105 D.P.R. 486 (1976), se resolvió en el limitado cauce del recurso gubernativo en el cual nunca se suscitó, pues no lo permite dicho procedimiento, cuestión alguna sobre tercero de buena fe." *Pascual v. Fernández Sierra*, 108 D.P.R. 426, 431 (1979).

mismo día que quedó inscrito el título de propiedad de Rosario Cirino.

*Tercero*, aunque el tribunal de instancia estimó que el Banco desconocía la realidad extrarregistral que viciaba el título de Rosario Cirino, un examen detenido y cuidadoso de las circunstancias prevalecientes nos lleva a concluir que no cumplió con el requisito de la buena fe al momento de constituirse en acreedor del derecho real.

 Como ya hemos observado, el principio de buena fe registral exige cierto grado de diligencia. La diligencia supone una disposición de cuidado y esmero que se traduce en una actividad realizada de la manera más idónea. En el caso de autos no se trata de un "ciudadano común y corriente", sino de una institución con suficiente pericia y dominio de las prácticas comerciales dentro de su esfera de actividad económica. Una entidad bancaria dedicada al financiamiento conoce los trámites necesarios para que los negocios —tanto en el ámbito civil como en el registral— puedan llevarse a cabo de la forma más acorde con el ordenamiento jurídico porque tiene las destrezas, el personal adecuado y los recursos económicos para detectar cualquier anomalía en el trámite que efectúa. Debió asegurarse de que el inmueble ofrecido en garantía apareciera inscrito en el Registro de la Propiedad a nombre del solicitante del préstamo. De ordinario, ese hecho puede acreditarse si se efectúa un estudio de título. *El Banco no lo hizo*. El único estudio de título que obra en autos corresponde a una finca de Brígido Rosario París (hermano de María E. Rosario). Si lo hubiera efectuado, hubiese reflejado que el verdadero titular con facultad para transmitir derechos sobre el inmueble era la Sra. María E. Rosario París y no Rosario Cirino.(10)

---

(10) El estudio de título incluido por el Banco de Santander (Banco) junto a su réplica a la demanda de intervención es el de la finca 8,003, colindante con la finca 8, 110 objeto de esta controversia. Fue realizado por el Sr. Felipe Fernández el 14 de octubre de 1982.

■ Existen otras circunstancias que, aunque por sí solas no constituyen falta de diligencia, vistas en conjunto confirman nuestra apreciación. El Banco no actuó con la suficiente diligencia que amerite protección registral. Primero, el hecho de que la escritura de compraventa se hubiese otorgado siete (7) meses antes del financiamiento; segundo, que en la propia escritura se indicara expresamente que el título no aparecía inscrito en el Registro de la Propiedad a nombre de la vendedora, y tercero, que el Banco no realizara la tasación de la propiedad y descansara en la tasación efectuada por el propio deudor hipotecario.

Por los fundamentos expuestos, *se expide el auto y se dicta sentencia mediante la cual se declara con lugar las demandas de intervención y cobro de dinero, y sin lugar la acción de ejecución de hipoteca. Se ordena la cancelación de la hipoteca en el Registro de la Propiedad y la inscripción del título a favor del interventor peticionario Rosario Manso. Sólo así hacemos cumplida justicia.*

---

En ningún momento el Banco ha alegado que por error o inadvertencia presentó un estudio de título que no fuera el verdadero. Tampoco sometió el correspondiente a la finca 8,110.