El Juez Asociado Señor Fuster
Berlingeri emitió la opinión del Tribunal.
Tenemos la ocasión de resolver si la protección de la tercería registral puede cobijar al adquirente de una pro *138 piedad que aparece inscrita dos veces en el Registro de la Propiedad a nombre de un mismo titular.
I
El Conquistador Partnership, L.P. (El Conquistador o parte peticionaria) solicita la revisión de una sentencia emitida por el Tribunal de Apelaciones el 7 de febrero de 2005. Mediante dicho dictamen el referido foro resolvió que El Conquistador no gozaba de la protección de la fe pública registral y le impuso el pago de las costas del pleito. Veamos los hechos que dan lugar a la controversia.
El 16 de octubre de 1972, los esposos Juan Tomás Medina y Gloria Garay vendieron en $5,000 dos parcelas de terreno (“A” y “B”) a su hija Carmen Lydia Medina Garay y su esposo Miguel Angel Ortiz (matrimonio Ortiz-Medina). La parcela “A”, ubicada en el Barrio Cabezas de Fajardo, consistía de noventa centésimas de cuerda y en ella existía una casa de madera. Por otra parte, la parcela “B”, ubicada en el mismo barrio, consistía de doce centésimas de cuerda y en ella enclavaba una casa de concreto y hormigón.(1)
Posteriormente, el matrimonio Ortiz-Medina presentó una solicitud de expediente de dominio ante el Tribunal de Primera Instancia. El 26 de julio de 1974 el Tribunal de Primera Instancia declaró “con lugar” la referida solicitud y el matrimonio Ortiz-Medina promovió la inscripción de las fincas en el Registro de la Propiedad. El 18 de septiembre de 1974, la parcela “A” fue inscrita como la finca 8,060 en el Folio 280 del Tomo 216 de la sección de Fajardo del Registro de la Propiedad. Por su parte, la parcela “B” fue inscrita como la finca 8,061 en el Folio 285 del Tomo 216 de la misma sección del Registro.
*139 En 1980 y 1984, respectivamente, Gloria Garay y Juan Tomás Medina fallecieron intestados.(2) Posteriormente, en 1988 ambas fincas fueron objeto de una segunda inscripción a nombre de los mismos titulares por un error del Registrador de la Propiedad.(3) En particular, la parcela “A” fue inscrita como la finca 14,278 en el Folio 1 del Tomo 333, mientras que la parcela “B” fue inscrita como la finca 14,279 en el Folio 6 del Tomo 333.
Así las cosas, en mayo de 1992 el matrimonio Ortiz-Medina le vendió a El Conquistador la parcela “B” por $45,000. En esa misma fecha, la Sra. Gladys Luz Medina Garay y su esposo Isaías García Estrada, quienes habían ocupado la estructura enclavada en la parcela “B”, le cedieron a El Conquistador cualquier derecho que éstos tuviesen sobre la misma a cambio de $26,000.
El 23 de julio de 1993, dos de los herederos del matrimonio Medina-Garay, los Sres. Tomás Medina Garay y Rogelio Medina Garay (demandantes recurridos) presentaron una demanda contra el resto de los herederos, El Conquistador, el Municipio de Fajardo, la Autoridad de Carreteras y el Departamento de Transportación y Obras Públicas.(4) Alegaron, en síntesis, que la compraventa efectuada entre los esposos Ortiz-Medina y Medina-Garay era nula por falta de causa. Además, adujeron que el título de dominio sobre la finca ostentado por El Conquistador era nulo porque los esposos Ortiz-Medina y Estrada-Medina no tenían facultad para transferirlo. Solicitaron que se declarara la *140 nulidad de las compraventas, que se realizara la partición de la herencia y que se les entregaran sus respectivas participaciones.
Tras los incidentes procesales de rigor, el Tribunal de Primera Instancia dictó una sentencia mediante la cual determinó, inter alia, que el contrato de compraventa suscrito entre el matrimonio Medina-Garay y el matrimonio Ortiz-Medina carecía de causa y lo declaró nulo. El foro de primera instancia también determinó que El Conquistador no gozaba de la protección de la tercería registral, dado que del propio Registro de la Propiedad surgía un problema de doble inmatriculación. El aludido foro concluyó, además, que tanto la parcela “A” como el valor correspondiente a la parcela “B” y a la estructura que había en ésta antes de su demolición,(5) correspondía por partes iguales a la sucesión Medina-Garay.
De acuerdo con lo antes expuesto, el Tribunal de Primera Instancia ordenó que la finca “A” se le entregara a la sucesión Medina-Garay para dividirla entre los herederos. En vista de que El Conquistador había cedido el dominio de la finca “B” a un tercero, el foro de primera instancia determinó que éste, los esposos Ortiz-Medina y los esposos Estrada-Medina responderían solidariamente por el valor de la finca y la estructura demolida.
Inconforme, El Conquistador recurrió ante el entonces Tribunal de Circuito de Apelaciones. Los demandantes recurridos presentaron una moción de desestimación ante dicho foro en la cual alegaron que El Conquistador no notificó su escrito de apelación dentro del término jurisdiccional a la codemandada Noemí Medina Garay. Por su parte, El Conquistador alegó que no notificó a dicha codemandada, pues ésta no era “parte” en el litigio porque no fue debidamente emplazada.
*141 Tras evaluar los argumentos de las partes, el foro apelativo desestimó el recurso instado por El Conquistador por falta de jurisdicción. Insatisfecho, El Conquistador acudió ante nos. En aquella ocasión, este Tribunal expidió el auto solicitado, revocó el dictamen del Tribunal de Apelaciones y devolvió el recurso a dicho foro para su disposición en cuanto a los méritos. Véase Medina v. Medina, 161 D.P.R. 806 (2004).
Así las cosas, el 7 de febrero de 2005 el Tribunal de Apelaciones dictó una sentencia mediante la cual confirmó la determinación del foro de primera instancia al resolver que la parte peticionaria no gozaba de la protección de la fe pública registral.(6) Inconforme, El Conquistador acudió ante nos y solicitó la revisión de dicho dictamen. En síntesis, la parte peticionaria alega que tiene derecho a la protección que la ley concede al tercero registral independientemente de que la transacción entre Carmen Medina Garay y sus padres haya sido simulada.(7)
El 26 de agosto de 2005 expedimos el auto de certiorari según solicitado. El 15 de noviembre del mismo año declaramos “con lugar” la solicitud de la parte peticionaria al amparo de la Regla 33(k) de nuestro Reglamento, 4 L.RR.A. Ap. XXI-A, a los efectos de que el asunto quedara sometido sin necesidad de presentar un alegato. En la misma Resolución concedimos un término adicional a los demandantes recurridos para que presentaran su alegato. Estando en posición de resolver, procedemos a hacerlo.
*142 II
A. Acorde con la tradición española, nuestro ordenamiento jurídico inmobiliario reconoce el Principio de Fe Pública Registral (o Publicidad Material). Banco de Santander v. Rosario Cirino, 126 D.P.R. 591, 601 (1990). El mismo está incorporado a través del Art. 105 de la Ley Hipotecaria y del Registro de la Propiedad (Ley Hipotecaria)(8) el cual dispone, en lo pertinente, lo siguiente:
A pesar que la inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, ni altera las relaciones jurídicas de quienes intervengan como partes en dichos actos o contratos, el tercero que de buena fe y a título oneroso adquiera válidamente algún derecho de persona que en el Registro aparezca con facultad para transmitirlo será mantenido en su adquisición, una vez haya inscrito su derecho, cuando por cualquier razón resulte inexacto el Registro, bien sea que se rescinda, resuelva o anule el título del otorgante en virtud de causas que no resulten clara y expresamente del propio Registro, o que existan sobre la finca acciones o títulos de dominio o de otros derechos reales que no estén debidamente inscritos.
La buena fe del tercero se presume siempre mientras no se prueba que al adquirir conocía la falta de exactitud del Registro. (Énfasis suplido.)
En virtud del citado precepto, nuestro Derecho Registral Inmobiliario protege a todos aquellos que reúnan las condiciones para ser considerados terceros regístrales. Se considera tercero a quien adquiera un derecho real confiando en las constancias del Registro de la Propiedad. Banco Santander v. Rosario Cirino, supra, pág. 601. Véanse, además: Infante v. Maeso, 165 D.P.R. 757 (2005); Mundo v. Fuster, 87 D.P.R. 363, 376 (1963). Para que opere la referida protección, se exige que aquel que la invoque cumpla con todos los requisitos establecidos en el Art. 105 de la Ley Hipotecaria, supra, los cuales, según hemos ex- *143 presado anteriormente, pueden recogerse en la máxima siguiente: deberá tratarse de un tercero civil que de buena fe y a título oneroso, en función de un registro inexacto, adquiera, en un negocio intervivos válido, un derecho real inmobiliario inscrito a nombre de una persona que según las constancias del Registro tenga facultades para transmitirle, sin que consten clara y expresamente las causas de la inexactitud ni concurra alguna de las excepciones a la aplicación de la fe pública registral, y que, a su vez, haya inscrito su adquisición. Banco Santander v. Rosario Cirino, supra, págs. 603-604.
B. Nuestro derecho registral inmobiliario está predicado en la presunción de certeza y corrección de las inscripciones que constan en el Registro de la Propiedad. Es por ello que una de las funciones más críticas de los registradores de la propiedad es cerciorarse de que los documentos que se presenten para inscripción no consten inscritos de antemano. Cruz Fontánez v. Registrador, 126 D.P.R. 182, 186 (1990); Rosado Collazo v. Registrador, 118 D.P.R. 577, 582 (1987); Acevedo v. Registrador, 115 D.P.R. 461, 462 (1984). De esta manera se trata de evitar el fenómeno de la doble inmatriculación. Cruz Fontánez v. Registrador, supra, págs. 186-187.
Por doble inmatriculación se entiende el hecho irregular de que una misma finca se encuentre inscrita en el Registro de la Propiedad en dos o más folios independientes. Según comenta Roca Sastre, la doble inmatriculación “puede afectar a la totalidad de una finca, o bien, a una finca que solamente está doblemente inmatriculada en una porción de ella”. (Énfasis suprimido.) R.M. Roca Sastre y L. Roca-Sastre Muncunill, Derecho Hipotecario, 8va ed. rev., Barcelona, Ed. Bosch, 1995, T. III, pág. 263. El problema de la doble inmatriculación es grave “porque, ante ese hecho, puede quebrar el presupuesto de fe pública registral y las presunciones que de él se derivan ...”. (Énfasis suprimido.) I. De Casso Romero, Derecho hipotecario o del *144 Registro de la Propiedad, 4ta ed. rev., Madrid, Inst, de Derecho Civil, 1951, págs. 366-367. Lamentablemente, este grave mal en la mecánica registral inmobiliaria “ ‘puede producirse incluso en los sistemas regístrales más perfectos en su base catastral, por cuanto el error siempre es posible, cuando no interviene la mala fe’ ”. Roca Sastre y Roca-Sastre Muncunill, op. cit., pág. 259.
La respuesta doctrinal y jurisprudencial ante la problemática de la doble inmatriculación ha sido negarle a los adquirentes de la finca en cuestión la protección de la tercería registral, debiéndose adjudicar las controversias planteadas de acuerdo con las reglas del Derecho Civil. Pérez Cruz v. Fernández, 101 D.P.R. 365, 371-372 esc. 6 (1973); Alameda Tower Associates v. Muñoz Román, 129 D.P.R. 698, 707 (1992). La necesidad de acudir a las reglas de Derecho Civil para resolver la pugna entre las inscripciones y determinar cuál es la que debe prevalecer se debe a que la existencia de asientos de igual rango y naturaleza contradictorios e incompatibles entre sí constituiría un absurdo.
III
A. En el caso de marras, la Parcela B fue inmatriculada en dos ocasiones. Sin embargo, ambas inscripciones fueron a nombre de los mismos titulares. La parte peticionaria sostiene que bajo estas circunstancias en realidad no cabe hablar de una doble inmatriculación y debe mantenerse la protección registral a favor del tercero adquirente. Esto en vista de que en circunstancias como la de autos, quien adquiere algún derecho sobre la propiedad en cuestión no tiene incertidumbre alguna en cuanto al título de la finca, pues se trata de una simple repetición de la inscripción a favor del mismo dueño.
Los argumentos de la parte peticionaria son sus *145 tancialmente cónsonos con la postura al respecto asumida por Roca Sastre. Éste sostiene que cuando la misma finca está inmatriculada varias veces, pero a nombre de la misma persona, “no hay ... verdadera doble inmatrieulación”. (Énfasis suplido.) Roca Sastre y Roca-Sastre Muncunill, op. cit, pág. 263. No obstante, aunque la doble inscripción no haya originado una situación antagónica como tal, como en el caso de autos, existe el riesgo de que la misma surja si la finca se enajena o grava por una de las inscripciones. íd. pág. 229.(9)
B. Amparándose en la opinión emitida por este Foro en Cruz Fontánez v. Registrador, supra, el Tribunal de Apelaciones resolvió que, independientemente de que la Parcela B estuviese inscrita dos veces a favor del mismo titular, la parte peticionaria no estaba protegida por la figura del tercero registral. Dicho foro concluyó que El Conquistador tenía que esperar a que se corrigiera la situación registral irregular para luego adquirir la propiedad si pretendía contar con las protecciones de la tercería registral.
En Cruz Fontánez v. Registrador, supra, explicamos que, a pesar de que la doctrina mayoritaria española considera que cuando una finca ha sido inmatriculada dos veces a favor de un mismo titular la anomalía puede ser corregida por el Registrador de la Propiedad, nuestra Ley Hipotecaria ordena que se recurra a los Tribunales para dilucidar el asunto y el Registrador no puede corregir de oficio el error. Señalamos que nuestra Asamblea Legislativa, al diferenciar el lenguaje del Art. 251 de la Ley Hipo *146 tecaria de su homólogo en la legislación española, expresó inequívocamente su deseo de que la normativa sobre doble inmatriculación incluyera los casos de varias inmatriculaciones a favor de un mismo titular. 30 L.P.R.A. see. 2776. En esa ocasión comentamos que no nos correspondía cuestionar la sabiduría de dicha determinación legislativa. Cruz Fontánez v. Registrador, supra, pág. 189.
Es necesario aclarar que en Cruz Fontánez v. Registrador, supra, no resolvimos expresamente que en casos de doble inmatriculación a favor de un mismo titular opera la excepción a la tercería registral que se ha reconocido para la doble inmatriculación a favor de distintos titulares. No obstante, aun si la interpretación del Tribunal de Apelaciones a esos efectos fuese cónsona con el referido caso, no podemos perder de perspectiva que en el momento en que lo resolvimos el citado Art. 251 de la Ley Hipotecaria tenía un texto diferente al actual. El texto anterior disponía lo siguiente:
Si el que tuviera inscrita a su favor una finca creyere que otra inscripción de finca señalada bajo número diferente se refiere al mismo inmueble y al mismo titular, podrá solicitar de la Sala del Tribunal Superior correspondiente que, con citación de todos los interesados y siempre que se pruebe la identidad de ambas fincas como un solo inmueble, dicte auto resolviendo cuál de ambas inscripciones subsistirá.
Cuando la doble inmatriculación se refiera a distintos titulares se resolverá por juicio ordinario sobre la identidad de la finca y el mejor derecho al inmueble.
En ambos casos se ordenará la cancelación de la inscripción correspondiente.
Cuando el registrador notare que una finca aparece inscrita más de una vez, notificará de tal hecho a los presentantes y a los notarios autorizantes de los títulos inscritos en ambas fincas y pondrá una nota, a los efectos de haber enviado tal aviso, al margen del asiento correspondiente de las fincas. El registrador no procederá a practicar ningún otro asiento hasta tanto no se cumpla con lo dispuesto en esta sección para el caso de la doble inmatriculación. 30 L.P.R.A. see. 2776 (ed. 1996).
Como vemos, de acuerdo con el contenido del anterior *147 Art. 251 se requería que cuando las dos inscripciones tuviesen el mismo titular se acudiese al foro judicial para subsanar dicho defecto.
Luego de haberse resuelto Cruz Fontánez v. Registrador, supra, el Art. 251 fue enmendado para permitir que cuando una finca aparezca inscrita a favor del mismo titular y, en casos donde no existan cargas sobre la misma, el Registrador de la Propiedad resuelva la discrepancia sin necesidad de intervención judicial.(10) El Art. 251 de la Ley Hipotecaria, 30 L.P.R.A. see. 2776, prescribe el vehículo procesal a través del cual se puede resolver la doble inmatriculación al disponer lo siguiente:
Si el que tuviera inscrita a su favor una finca creyere que otra inscripción de finca señalada bajo número diferente se refiere al mismo inmueble y al mismo titular, podrá solicitar del señor [Registrador] que, con citación de todos los interesados conforme lo dispuesto en las Reglas de Procedimiento Civil, Ap. Ill del Título 32, y siempre que se pruebe la identidad de ambas fincas como un sólo inmueble, resuelva cuál de ambas inscripciones subsistirá, procediendo éste con la cancelación de una de ellas.
No obstante, en aquellos casos en que todos los interesados no pueden ponerse de acuerdo, tendrán que acudir al Tribunal de Primera Instancia para resolver la controversia.
Cuando la doble inmatriculación se refiera a distintos titulares se resolverá por juicio ordinario sobre la identidad de la finca y el mejor derecho al inmueble.
En ambos casos se ordenará la cancelación de la inscripción correspondiente.
Cuando el Registrador notare que una finca aparece inscrita más de una vez, a favor de un mismo titular, notificará de tal hecho al presentante y al notario autorizante. Si no hay cargas en ninguna de las dos fincas, el titular procederá a hacer la petición correspondiente ante el Registrador de la Propiedad, quien resolverá sobre el particular. De existir cargas en cualquiera de las dos fincas, el titular del dominio dará cumplimiento al procedimiento establecido en el primer párrafo de esta sección. (Enfasis suplido.)
*148 Conforme al artículo antes transcrito, para resolver un caso de doble inmatriculación que involucre distintos titulares, se tiene que celebrar un juicio ordinario. No obstante, cuando se trata del mismo titular y la misma finca, no es necesario acudir al tribunal. Nos parece razonable y apropiado concluir que el procedimiento no adversativo dispuesto en el último párrafo del actual Art. 251 constituye una expresión inequívoca de que la Asamblea Legislativa no ha pretendido extender a los casos de doble inmatriculación a favor de un mismo titular la excepción a la tercería registral que opera en caso de doble inmatriculación a favor de distintos titulares.
C. De acuerdo con lo antes expuesto, resolve-mos que no existe impedimento para que se aplique la figura del tercero registral en situaciones como la del caso de autos, cuando una finca ha sido inmatriculada más de una vez a favor de un mismo titular y no se ha producido una enajenación o gravamen que conste en uno de los asientos de inscripción. Esta conclusión es cónsona con la doctrina española de mayor peso, la cual, según explicamos, considera que la doble inmatriculación de una finca a favor de un mismo titular no derrota la protección del tercero registral.
Por lo anterior, no es necesario que nos pronunciemos con relación al segundo señalamiento de error (la imposición de costas contra la parte peticionaria).
Por las razones antes expresadas, se revoca la sentencia recurrida y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.
El Juez Asociado Señor Rivera Pérez no intervino.

 Los asientos de inscripción registral se refieren a la unidad de medida de las fincas como “centavos de cuerda”, esto es, se dice que la parcela “A” mide 90 centavos de cuerda y la parcela “B” mide 12 centavos de cuerda.

 Varios años después, en mayo de 1995, el Tribunal de Primera Instancia emitió una resolución sobre declaratoria de herederos en el caso CD95-274. Dicho foro declaró como únicos y universales herederos de los esposos Medina-Garay y a sus hijos Tomás, Rogelio, Gladys Luz, Carmen Lydia y Noemí —todos de apellidos Medina Garay— así como a Domingo y Reina Medina Vidal, en representación del para entonces fallecido Domingo Medina Garay y del también fallecido Severiano Medina Garay, a Ruth Lillian y Daisy Luz Medina.

 El hecho de que el error es atribuible al Registrador de la Propiedad no está en controversia.

 Desde tempranas etapas del proceso, el Municipio de Fajardo, la Autoridad de Carreteras y el Departamento Transportación y Obras Públicas dejaron de formar parte del mismo.

 La referida estructura se demolió para facilitar una construcción posterior que realizó el Estado Libre Asociado de Puerto Rico.

 Inicialmente, el foro apelativo modificó la sentencia del Tribunal de Primera Instancia en cuanto a la imposición de costas y devolvió el caso a dicho foro para que dilucidara si procedía la demanda contra coparte que presentó El Conquistador. En reconsideración, el Tribunal de Apelaciones modificó su sentencia para dejar en vigor la aprobación del memorando de costas que hizo el foro de primera instancia.

 El Conquistador planteó los señalamientos de error siguientes:
“1. Erró el Tribunal de Apelaciones al no conceder a El Conquistador la protección de ‘tercero registral’.
“2. Erró el Tribunal de Apelaciones al, en reconsideración, aprobar en su totalidad el [memorando] de costas de la parte demandante.” Solicitud de certiorari, pág. 8.

 30 L.P.R.A. sec. 2355.

 Así, Roca Sastre comenta lo siguiente:
“Mientras esta doble inmatrieulación de finca se mantenga con el mismo y solo titular registral y con el estado de cargas y afecciones existentes, no hay de momento conflicto grave de doble inmatrieulación, pero entre tanto subsiste el peligro de que este mismo titular, por ignorar incluso esta situación registral de anormalidad, enajene o grave la finca, con la consiguiente inscripción del acto en una sola de las hojas o registros particulares de la finca, o, incluso que, por ignorancia, los herederos enajenen la misma finca a personas distintas, creyendo que son dos fincas diferentes, cuya creencia vendrá propiciada por el Registro.” R. Roca Sastre y L. Roca-Sastre Muncunill, Derecho Hipotecario, 8va ed. rev., Barcelona, Ed. Bosch, 1995, T. III, pág. 263 esc. 9.

 Arts. 1 y 2 de la Ley Núm. 4 de 13 de febrero de 1996.