ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| FRANCIS JAVIER SANTIAGO MALDONADO<br><br>Apelante<br><br>v.<br><br>RUTH N. ALVELO RIVERA, MADELINE CORREA RODRÍGUEZ, ANÍBAL BATISTA PADUA, Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES CONSTITUIDA POR ELLOS, SAIDETH CRISTOBAL MARTÍNEZ Y JUAN DEL PUEBLO<br><br>Apelada | **TA2026AP00235** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Fajardo<br><br>Civil Núm. FA2023CV00997<br><br>Sobre: Solicitud de Sentencia, Declaratoria sobre Tercero Registral de Buena Fe |

Panel integrado por su presidenta la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 16 de abril de 2026.

Comparece ante nos el Sr. Francis J. Santiago Maldonado (señor Santiago o "el apelante") y nos solicita que revisemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo, notificada el 3 de febrero de 2026. Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* la demanda instada por el apelante, debido a que no cumplía con los requisitos para ser declarado tercero registral de buena fe.

Por los fundamentos que expondremos a continuación, **CONFIRMAMOS** la *Sentencia* apelada.

### I.

El 26 de noviembre de 2023, el apelante presentó una *Demanda* sobre *Solicitud de Sentencia Declaratoria sobre Tercero Registral de Buena Fe* en contra de Madeline

Correa Rodríguez, Aníbal Batista Padua, la Sociedad Legal de Bienes Gananciales constituida por ellos (matrimonio Batista Correa), Honorable Registrador de la Propiedad de Fajardo el Sr. Julio C. Fragoso González, Honorable Secretario de Justicia,[1] Saideth Cristóbal Martínez (Lcda. Cristóbal) y Juan del Pueblo.[2] En esta, alegó que adquirió por la cantidad de $150,000.00 el Apartamento Núm. 5-E Torre II del Condominio Isleta Marina en el Municipio de Fajardo, mediante la Escritura Núm. 29 de Compraventa, otorgada en Fajardo, Puerto Rico, el **11 de mayo de 2022** ante la Lcda. Cristóbal. Añadió que, la Escritura Núm. 29 había sido presentada el **31 de diciembre de 2022** al Asiento 2022-167586-FA-01 en el Registro de la Propiedad. Asimismo, señaló que al momento de su presentación la propiedad estaba inscrita a nombre del Sr. Edgardo M. Colón Ledée (señor Colón) y tenía una anotación de Hogar Seguro, inscripción 7ma, mediante la Escritura Núm. 22, otorgada en San Juan, Puerto Rico, el **4 de diciembre de 2020.** A su vez, expresó que la Escritura Núm. 29 había sido inscrita en la finca 9856, inscripción 8va, por el Honorable Registrador Julio C. Fragoso González, el **7 de agosto de 2023,** a las 4:17pm.

El apelante arguyó que a la fecha de la compra del apartamento no existía ninguna anotación de aviso de demanda o de embargo en el Registro de la Propiedad. Sin embargo, que el **31 de julio de 2023,** había sido

---

[1] El 26 de enero de 2024, el Estado Libre Asociado de Puerto Rico, por sí y en representación del Registrador de la Propiedad de Puerto Rico, Sección de Fajardo, presentó una *Moción de Desestimación*. Véase, entrada núm. 23 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC). El 26 de febrero de 2024, el foro primario notificó una *Sentencia Parcial*, en la cual declaró *Ha Lugar* la moción de desestimación. Véase, entrada núm. 34 en SUMAC.
[2] *Demanda*, entrada núm. 1 SUMAC.

presentada una *Orden de Mandamiento*, la cual le ordenaba al Registrador que rectificara el tracto registral del inmueble en controversia "a los fines de eliminar la escritura de compraventa y el improcedente asiento del Acta de Hogar Seguro, y revertir así cualquier transferencia que se haya hecho sobre la propiedad de manera ilegítima." Sin embargo, enfatizó que la *Orden y Mandamiento* no le fue notificada, en violación a su debido proceso de ley. Por ello, sostuvo que cumplía con todos los requisitos de tercero registral de buena fe, y procedía el relevo de los efectos de la *Sentencia* dictada en el caso KDP2012-0472.[3]

El 9 de febrero de 2024, el matrimonio Batista Correa presentó su *Contestación a la Demanda*.[4] En esencia, admitieron que embargaron, entre otras, el apartamento en el Condominio Isleta Marina en Fajardo, perteneciente al señor Colón, para asegurar la ejecución de la *Sentencia* dictada en el caso KDP2012-0472.

Por su parte, el 30 de abril de 2024, la Lcda. Cristóbal presentó su *Contestación a Demanda*.[5] Como parte de sus defensas afirmativas, señaló que el 11 de mayo de 2022 otorgó la compraventa del inmueble en

---

[3] En el caso *Madeline Correa Rodríguez v. Dr. Edgardo M. Colón Ledeé* caso civil núm. K DP2012-0472, el **1 de marzo de 2016**, el Tribunal de Primera Instancia dictó una *Sentencia* mediante la cual le ordenó al señor Colón a pagarle a la señora Correa la cantidad de $249,000.00 en concepto de daños y perjuicios. Sin embargo, debido a la insuficiencia de bienes para satisfacer la *Sentencia*, el **7 de diciembre de 2016** la señora Correa presentó una moción para solicitar la designación del Apartamento de Fajardo como un bien a ser embargado. Así pues, el foro *a quo* concedió la petición el **24 de enero de 2019** y ordenó la ejecución del inmueble en satisfacción de la *Sentencia*. No obstante, debido a defectos en el documento judicial, el **22 de enero de 2021**, el foro primario emitió otra *Orden y Mandamiento* para subsanar el defecto. Así pues, el **12 de marzo de 2021** fue presentada la instancia y el **8 de febrero de 2022** el Registrador de la Propiedad anotó el embargo sobre el inmueble.
[4] *Contestación a la Demanda*, entrada núm. 26 en SUMAC. El 2 de diciembre de 2024, presentaron la contestación a la demanda enmendada. Véase, entrada núm. 71 en SUMAC
[5] *Contestación a Demanda*, entrada núm. 45 en SUMAC. El 13 de diciembre de 2024, presentó la contestación a la demanda enmendada. Véase, entrada núm. 76 en SUMAC.

controversia, luego de haber revisado la titularidad a nombre del señor Colón, con una inscripción de hogar seguro. Asimismo, mencionó que revisó varios embargos federales para los cuales había orden de cancelación del Tribunal Federal; varios pagarés; y un aviso de embargo por sentencia "a nombre de la Sra. Madeline Correa Rodríguez y la presentación de 2 Instancias solicitando la cancelación de aviso de embargo por sentencia, por estar esta notificada y caducada." Añadió que, luego de actualizado el estudio, apareció nuevamente el aviso de embargo, aunque no tenía entrada debido a que antes había sido inscrito el Hogar Seguro a nombre del titular. De otra parte, arguyó que, para diciembre de 2022, el señor Santiago se comunicó para informarle que había un aviso de subasta sobre su apartamento.

Posteriormente, el 29 de octubre de 2024, el señor Santiago presentó una *Moción Solicitando Autorización para Enmendar la Demanda*.[6] En esta, indicó que luego de la vista inicial del caso, y de analizar los criterios para determinar si faltaban partes indispensables, entendió que la Sra. Ruth Alvelo Rivera (señora Alvelo) reunía los requisitos. Manifestó que, la señora Alvelo había adquirido la propiedad en controversia en una subasta producto del embargo realizado a su apartamento, por lo que, se vería perjudicada si se determinaba que el apelante era tercero registral de buena fe. De otra parte, enfatizó que el señor Colón no era parte indispensable por las siguientes razones:

> a. El Sr. Colón Ledée le vendió el apartamento 5-E al demandante el 11 de mayo de 2022, por lo que no tiene ningún interés que proteger.

---

[6] *Moción Solicitando Autorización para Enmendar la Demanda*, entrada núm. 63 en SUMAC.

b. En los casos sobre tercero registral de buena fe no hay que tomar en consideración la posición del que transfiere la propiedad. Lo que se evalúa es si el tercero conocía del supuesto defecto para adquirir el bien.

c. Con la determinación de tercero de buena fe, al Sr. Colón Ledée no se le afecta ningún derecho.

El 30 de octubre de 2024, el foro apelado notificó una *Orden*, en la que permitió la enmienda a la demanda.[7]

El 13 de diciembre de 2024, la señora Alvelo presentó su *Contestación a Demanda Enmendada*.[8] En esencia, sostuvo que el apelante conocía sobre la anotación de demanda, sentencia y embargo que constituían un gravamen sobre la propiedad y se arriesgaba a la pérdida del bien gravado. Asimismo, alegó que al señor Santiago no le cobijaba la protección de tercero registral por carecer de buena fe. A su vez, como parte de las defensas afirmativas, esbozó que la demanda enmendada no procedía por falta de parte indispensable. Sostuvo que, el señor Colón, fue el vendedor del inmueble en controversia, conocía del embargo anotado, y era el único que debía responder al apelante por el vicio al hacerse efectivo el embargo y ejecución del bien.

Luego de varias incidencias procesales, el 19 de mayo de 2025, el señor Santiago presentó una *Moción Solicitando Autorización para Enmendar la Demanda*.[9] En esta, solicitó enmendar la demanda para traer al pleito al señor Colón, puesto que, había sido la persona que aparecía en el Registro de la Propiedad como dueño del

---

[7] *Orden*, entrada núm. 64 en SUMAC.
[8] *Contestación a Demanda Enmendada*, entrada núm. 75 en SUMAC.
[9] *Moción Solicitando Autorización para Enmendar la Demanda*, entrada núm. 98 en SUMAC.

apartamento en controversia, con el resultado de este pleito, se vería afectado su interés.

Posteriormente, el 20 de junio de 2025, el apelante presentó nuevamente una *Moción Solicitando Autorización para Enmendar la Demanda*.[10]

El 15 de julio de 2025, el foro primario notificó una *Orden*, en la cual declaró *No Ha Lugar* la moción para enmendar la demanda.[11] A su vez, expresó lo siguiente: "[e]l 29 de octubre de 2024, se le permitió enmendar la *Demanda* y en aquel entonces, se incluyó a la Sra. Ruth Alvelo Rivera y específicamente, [el] demandante indicó, que el Sr. Edgardo Colón Ledée, no era parte indispensable, por las razones allí esbozadas."

El 14 de septiembre de 2025, fue presentado el *Informe de Conferencia con Antelación a Juicio*.[12]

Posteriormente, el 26 de diciembre de 2025, la señora Alvelo presentó una *Moción en Solicitud de Sentencia Sumaria*.[13] En esta, señaló que había adquirido el inmueble en controversia el 6 de febrero de 2024 en una subasta pública judicial. Asimismo, arguyó que el señor Maldonado había admitido la existencia del embargo anotado que gravaba la propiedad, y aun así lo adquirió con dicho conocimiento. Por ello, reiteró que el apelante carecía de buena fe, no tenía prioridad registral y estaba carente de un derecho oponible. Añadió que no había controversia sobre que la anotación de embargo había sido inscrita el 8 de febrero de 2022, la cual surgía de la escritura, era de conocimiento por

---

[10] *Moción Solicitando Autorización para Enmendar la Demanda*, entrada núm. 103 en SUMAC.
[11] *Orden*, entrada núm. 104 en SUMAC.
[12] *Informe de Conferencia con Antelación a Juicio*, entrada núm. 108 en SUMAC.
[13] *Moción en Solicitud de Sentencia Sumaria*, entrada núm. 120 en SUMAC.

las partes y ostentaba un rango preferente sobre la compraventa del 11 de mayo de 2022.

Por su parte, el 29 de diciembre de 2025, el señor Santiago presentó una *Moción Solicitando Sentencia Sumaria*.[14] En síntesis, esbozó que era tercero registral de buena fe al comprar el inmueble en controversia. Sostuvo que, la compraventa del apartamento fue presentada al Registro de la Propiedad el 31 de diciembre de 2022, siendo inscrita el 7 de agosto de 2023. Mencionó que, el matrimonio Padua Correa como parte de las gestiones para cobrar la *Sentencia* (KDP2012-0472) contra el señor Colón solicitaron anotación de embargo el 4 de febrero de 2019. No obstante, arguyó que dicha anotación fue notificada por defectos, por lo que, al no corregirlos caducó el 15 de enero de 2021. Resaltó que, lo único que aparecía inscrito era el Hogar Seguro del señor Colón. Por ello, indicó que había adquirido de manera válida, de buena fe y a título oneroso el apartamento.

El 30 de diciembre de 2025, el foro primario notificó varias órdenes, concediéndole hasta el 20 de enero de 2026, a todas las partes para que se expresaran sobre las mociones de sentencia sumaria presentadas.[15]

El 7 de enero de 2026, la señora Alvelo presentó una *Moción en Cumplimiento de Orden*.[16] En esencia, reiteró que el apelante conocía que en la escritura de compraventa existía el embargo judicial y había sido advertido de dicho gravamen. Esbozó que dicha admisión destruyó la presunción de buena fe como cuestión de derecho. Asimismo, añadió que previo al otorgamiento de

---

[14] *Moción Solicitando Sentencia Sumaria*, entrada núm. 121 en SUMAC.
[15] Véanse, entradas 122-123 en SUMAC.
[16] *Moción en Cumplimiento de Orden*, entrada núm. 124 en SUMAC.

la *Escritura de Compraventa*, el inmueble se encontraba gravado con un embargo judicial debidamente anotado en el Registro de la Propiedad, el cual ostentaba prioridad registral. Por consiguiente, alegó que no se activó la presunción de buena fe registral, ni podía operar la protección del tercero registral.

El 15 de enero de 2026, el apelante presentó su *Oposición a Moción Solicitando Sentencia Sumaria*.[17] Alegó que, cumplía con todos los requisitos para ser declarado tercero registral de buena fe. Así pues, resaltó que había comprado una propiedad a la persona que surgía del Registro de la Propiedad con facultad para transmitirla; la propiedad tenía una anotación de Hogar Seguro y no existía ningún impedimento para comprarla; y la escritura de compraventa había sido debidamente inscrita en el Registro de la Propiedad. A su vez, arguyó que al no haber sido parte en el caso KDP2012-0472, no le notificaron las órdenes y mandamientos emitidos contra la propiedad, aun sabiendo que él había comprado el inmueble afectado.

El 16 de enero de 2026, el matrimonio Batista Correa presentó su *Oposición a Moción Solicitando Sentencia Sumaria* instada por el apelante.[18] En esencia, mencionó que, se encontraba en la misma posición que la señora Alvelo con respecto a sus planteamientos y defensas en torno a las alegaciones del señor Santiago. Por lo que, solicitó se dictara sentencia sumaria a favor de desestimar la demanda.

---

[17] *Oposición a Moción Solicitando Sentencia Sumaria*, entrada núm. 128 en SUMAC.
[18] *Oposición a Moción Solicitando Sentencia Sumaria*, entrada núm. 130 en SUMAC.

El 19 de enero de 2026, el señor Santiago presentó una *Moción Informativa*.[19] Entre otras alegaciones, esbozó que la oposición a solicitud de sentencia sumaria presentada por la señora Alvelo no cumplió con la Regla 36.3 de Procedimiento Civil.

El 20 de enero de 2026, la Lcda. Cristóbal presentó *Moción Uniéndonos a Solicitud de Sentencia Sumaria De la Parte Demandante*.[20]

Evaluadas las mociones, el 3 de febrero de 2026, el foro primario notificó la *Sentencia* apelada.[21] Mediante esta, declaró *No Ha Lugar* la Demanda presentada por el apelante, al no darse los requisitos para ser declarado como tercero registral de buena fe. Como parte de su determinación, adoptó los siguientes hechos no controvertidos:

1. El 1 de marzo de 2016, el Tribunal de Primera Instancia, Sala de San Juan, dictó sentencia en el caso Madeline Correa Rodríguez y Aníbal Batista Padua v. Edgardo Colón Ledée, Caso Civil Núm. KDP2012-0472, condenando al demandado Edgardo Colón Ledée al pago de $249,000.00 más $10,000.00 por honorarios por temeridad.

2. El 4 de febrero de 2019, como parte el caso civil antes mencionado, se presentó en el Registro de la Propiedad de Fajardo una orden y mandamiento de embargo sobre la finca núm. 9856, Apartamento 5-E del Condominio Isleta Marina.

3. Dicha anotación fue notificada por defectos el 16 de noviembre de 2020 y caducada el 13 de abril de 2021.

4. El 4 de diciembre de 2020, el Sr. Colón Ledée solicitó la anotación de Hogar Seguro en el Registro de la Propiedad sobre el referido apartamento, asiento 2020-097686-FA01.

5. El 12 de marzo de 2021 se presentó en el Registro de la Propiedad de Fajardo otra Orden y Mandamiento de Embargo sobre la

---

[19] *Moción Informativa*, entrada núm. 132 en SUMAC.
[20] *Moción Uniéndonos a Solicitud de Sentencia Sumaria De la Parte Demandante*, entrada núm. 133 en SUMAC.
[21] *Sentencia*, entrada núm. 141 en SUMAC.

finca núm. 9856, Apartamento 5-E del Condominio Isleta Marina, asiento 2021-028648-FA01, el cual quedó inscrito el 8 de febrero de 2022.

6. El 11 de mayo de 2022, el demandante Francis Javier Santiago Maldonado otorgó la Escritura Núm. 29 de Compraventa ante la notaria Lcda. Saideth Cristóbal Martínez, mediante la cual adquirió el referido inmueble de Edgardo Colón Ledée. Tal transacción fue presentada en el Registro de la Propiedad el 31 de diciembre 2022.

7. En la sección de cargas y gravámenes de la Escritura Núm. 29 se advirtió expresamente la existencia del embargo judicial inscrito, correspondiente al caso KDP2012-0472.

8. Por su parte, la anotación de embargo de 12 de marzo de 2021 fue cancelada debido a la anotación previa de Hogar Seguro.

9. Así las cosas, el 17 de julio de 2023, el Tribunal de Primera Instancia, Sala de San Juan en el caso KDP2012-0472, dictó una Orden y Mandamiento judicial disponiendo la rectificación del tracto registral, la cancelación de la anotación de Hogar de Seguro, la cancelación de la compraventa de 11 de mayo de 2022 y la continuación del proceso de ejecución del apartamento en cuestión mediante subasta judicial.

10. Los recursos de reconsideración y certiorari presentados contra dicha orden fueron denegados, y esta advino final y firme.

11. El 6 de febrero de 2024, se celebró la subasta judicial del inmueble, resultando la co-demandada Ruth N. Alvelo Rivera como licitadora agraciada por la suma de $129,000.00.

12. Posteriormente, se otorgó la escritura de venta judicial y se realizó la entrega judicial de la posesión del inmueble a la Sra. Alvelo Rivera.

Por lo tanto, expresó que era un hecho incontrovertido que el embargo judicial había quedado inscrito el 8 de febrero de 2022, con anterioridad a la compraventa otorgada el 11 de mayo de 2022, por ello, ostentaba un rango preferente y oponible *erga omnes* contra todo adquiriente posterior del inmueble.

Finalmente, concluyó que el señor Santiago había sido advertido sobre el embargo que gravaba el apartamento, puesto que, surgía de los gravámenes en la escritura de compraventa, como de las advertencias y recomendación expresa de la Notaria de adquirir un seguro de título previo a la compra de la propiedad en controversia. Así las cosas, dispuso que no podía imputársele desconocimiento sobre las "inexactitudes" del Registro, el cual es un requisito fundamental para ser considerado tercero registral de buena fe.

Inconforme, el 4 de marzo de 2026, el apelante presentó el recurso de epígrafe y esbozó los siguientes señalamientos de error:

A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO DARLE CUMPLIMIENTO A LO DISPUESTO POR LA REGLA 36.3 (d) DE PROCEDIMIENTO CIVIL Y DICTAR SENTENCIA SUMARIA A PESAR DE EXISTIR UNA CONTROVERSIA SUSTANCIAL SOBRE HECHOS ESENCIALES Y PERTINENTES.

B. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE EL APELANTE NO REÚNE LOS REQUISITOS DE TERCERO REGISTRAL DE BUENA FE.

C. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO AUTORIZAR QUE SE ENMENDARA LA DEMANDA PARA INCLUIR A UNA PARTE INDISPENSABLE.

D. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DARLE VALIDEZ A UN EMBARGO, Y POSTERIOR SUBASTA, CONTRA UNA PROPIEDAD INSCRITA A NOMBRE DE UNA PERSONA QUE NO FUE PARTE EN EL PLEITO.

El 5 de marzo de 2026, emitimos una *Resolución* en la cual le concedimos a la parte apelada el término dispuesto en nuestro Reglamento, según enmendado, 2025 TSPR 42, para que presentaran su alegato.

El 26 de marzo de 2026, el matrimonio Batista Correa presentó su alegato en oposición.

Posteriormente, el 4 de abril de 2026, la señora Alvelo presentó su *Alegato en Oposición a Apelación*.

Finalmente, el 7 de abril de 2026, la Lcda. Cristóbal presentó su alegato. En esencia, señaló que no se oponía al recurso presentado por el señor Santiago.

Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver el recurso de epígrafe. Veamos.

**II.**

**-A-**

En nuestro ordenamiento jurídico el mecanismo de sentencia sumaria se rige por la Regla 36 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 36. En esencia, dicha norma procesal dispone que para poder adjudicar en los méritos una moción de sentencia sumaria se requiere que se presente "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente" ya sea sobre la totalidad de la reclamación o parte de esta. *Íd.*

El mecanismo procesal de la sentencia sumaria es un remedio de carácter extraordinario y discrecional. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 184 (2005). Tiene como finalidad "propiciar la solución justa, rápida y económica de litigios civiles que no contengan controversias genuinas de hechos materiales." *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 128 (2012). Por ser la sentencia sumaria un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día

en corte', principio elemental del debido proceso de ley." (Citas omitidas) *Mgmt. Adm. Servs. Corp. v. ELA,* 152 DPR 599, 611 (2000).

A su vez, quien promueve la sentencia sumaria "debe demostrar que no existe controversia sustancial o real en cuanto a algún hecho material, es decir, en cuanto a ningún componente de la causa de acción." *Meléndez González v. M. Cuebas*, 193 DPR 100, 110 (2015). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Mientras que, quien se opone a una sentencia sumaria debe presentar documentos y declaraciones que contradigan los hechos incontrovertidos por parte del promovente. *Rivera et al. v. Superior Pkg., Inc. et al.,* 132 DPR 115, 133 (1992). Por lo cual, viene obligado a contestar de forma detallada la solicitud de sentencia sumaria. *Íd*.

La sentencia sumaria sólo debe dictarse en casos claros. Por tanto, cuando no existe una certeza clara sobre todos los hechos materiales en la controversia, no procede la sentencia sumaria. Al dictar una sentencia sumaria el Tribunal deberá realizar un análisis dual el cual consiste en analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal; y determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. *Vera v. Dr. Bravo*, 161 DPR 308, 333 (2004). Una vez realizado este análisis el tribunal no

dictará sentencia sumaria cuando existan hechos materiales y esenciales controvertidos; haya alegaciones afirmativas en la demanda que no han sido refutadas; surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial; o como cuestión de derecho no proceda. *Íd.* págs. 333-334.

De otra parte, según se ha establecido jurisprudencialmente el foro apelativo se encuentra en la misma posición que el foro primario para determinar si procede una sentencia sumaria. Sin embargo, al revisar la determinación del foro *a quo*, el tribunal revisor está limitado de dos (2) maneras: (1) sólo puede considerar los documentos que se presentaron ante el foro de primera instancia; y (2) sólo puede determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. No puede adjudicar los hechos materiales esenciales en disputa. *Vera v. Dr. Bravo*, supra, págs. 334-335.

El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro revisor. Por consiguiente, el Tribunal Supremo de Puerto Rico, en *Meléndez González et al. v. M. Cuebas*, supra, estableció el estándar que debemos utilizar como foro apelativo al momento de evaluar determinaciones sumarias del tribunal primario. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario". *Íd.* pág. 118. Además, reiteró que

por estar en la misma posición que el foro primario, debemos revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Íd.*

Una vez completada la revisión del expediente por parte del foro revisor, de encontrar que en realidad existen hechos materiales y esenciales en controversia, se debe tener en cuenta que, como foro apelativo intermedio, debemos cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y exponer concretamente cuáles hechos materiales están controvertidos y cuáles no. Por el contrario, de resultar que los "hechos materiales realmente están incontrovertidos", nos corresponde "revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia." *Íd.*, pág. 119.

**-B-**

La sentencia declaratoria es el remedio que una parte puede solicitar en un proceso en el que los hechos demuestran que existe una controversia sustancial entre partes con intereses legales opuestos y por lo cual requieren de una certeza jurídica. Es un mecanismo que permite anticipar la dilucidación de los méritos de diversas causas de acción ante un tribunal y ofrece un procedimiento judicial práctico para resolver una controversia, antes de que esta llegue a la etapa en que el peligro contra los derechos del promovente se convierta en uno real y sea necesario otro remedio directo. *Moscoso v. Rivera*, 76 DPR 481, 489 (1954).

De esta forma, la sentencia declaratoria propicia la seguridad y certidumbre en las relaciones jurídicas tanto en el ámbito público, como en el privado. *Romero*

*Barceló v. ELA,* 169 DPR 460, 475 (2006). Así pues, al dictar una sentencia declaratoria, el Tribunal de Primera Instancia debe sopesar los intereses públicos y privados de las partes, la necesidad de emitir dicho recurso y el efecto que ello tiene sobre lo reclamado. *Moscoso v. Rivera*, supra, págs. 492-493.

La Regla 59.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 59.1, establece lo siguiente:

> El Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas aunque se inste o pueda instarse otro remedio. No se estimará como motivo suficiente para atacar un procedimiento o una acción el que se solicite una resolución o sentencia declaratoria. La declaración podrá ser en su forma y efectos, afirmativa o negativa, y tendrá la eficacia y el vigor de las sentencias o resoluciones definitivas. Independientemente de lo dispuesto en la Regla 37, el tribunal podrá ordenar una vista rápida de un pleito de sentencia declaratoria, dándole preferencia en el calendario.

Aunque la concesión de la sentencia declaratoria descansa en la sana discreción del juzgador, el aludido remedio se limita a que la controversia que se presente sea real y no especulativa. Asimismo, "[d]ebe demostrarse que los intereses de la justicia serían bien servidos y que la sentencia que se dicte sea efectiva y adecuada." *Moscoso v. Rivera*, supra, pág. 492.

-C-

El tercero registral es quien adquiere un derecho real confiando en las instancias de un registro cuyas inscripciones son, como norma general, voluntarias. Ello implica que pueden existir discrepancias entre lo que constituye la realidad registral con la extraregistral. No obstante, el derecho inmobiliario imparte al Registro de la Propiedad una presunción *iuris*

*tantum* de corrección respecto a los inmuebles allí inscritos, presunción sobre la cual, en gran medida, se apoya la figura de la fe pública registral. En particular, el Artículo 24 de la Ley Núm. 210 de 8 de diciembre de 2015, *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico* (Ley Hipotecaria), dispone que "[a] todos los efectos legales[,] se presumirá que los derechos publicados en el asiento de inscripción de cada finca existen y pertenecen a su titular en la forma determinada por el asiento respectivo." 30 LPRA sec. 6049. Así pues, en virtud del citado precepto, nuestro ordenamiento registral inmobiliario protege a todos aquellos que reúnan las condiciones para ser considerados terceros registrales.

Se considera tercero a quien adquiera un derecho real confiando en las constancias del Registro de la Propiedad. *Banco Santander v. Rosario Cirino*, 126 DPR 591, 601 (1990). En el caso antes citado, el Tribunal Supremo de Puerto Rico indicó lo siguiente:

> Quien alegue ser tercero hipotecario debe haber adquirido del titular registral o de su representante. "Esta es la razón por la cual se está dando esta protección excepcional; porque se trata de una persona que confió en esa constancia, adquirió de esa persona y cumplió con todos los demás requisitos, entonces está protegido por el Registro, no importa cuál fuera la verdadera situación extra[r]registral." […] Sobre este aspecto, Roca Sastre, […] señala que "presupone que al tiempo de la adquisición por el tercero ya ha de aparecer del Registro como titular del derecho enajenado, aunque no conste practicada la inscripción a su favor [del transferente] pero sí presentado su título adquisitivo y que este llegue a inscribirse". (Citas omitidas.) *Banco Santander v. Rosario Cirino*, supra, pág. 608, citando a R. Roca Sastre, *Derecho Hipotecario*, 7ma. ed., Bosch, Tomo I, 1979, pág. 724.

Añade el tratadista Roca Sastre que la fe pública registral sólo desplegará su función protectora de tal adquisición una vez esta haya ingresado y sido inscrita en el Registro, aunque remontándose al tiempo de haberse producido el referido negocio jurídico de adquisición. *Íd.*, pág. 701.

El principio de la tercería registral es regulado por el Artículo 35 de la Ley Hipotecaria, 30 LPRA sec. 6050, el cual establece lo siguiente:

> El asiento de inscripción no convalida los actos o contratos que sean nulos con arreglo a las leyes, ni altera las relaciones jurídicas de quienes intervengan como partes en dichos actos o contratos.
>
> No obstante, el derecho real de un tercero estará protegido por la fe pública registral y será mantenido en su adquisición cuando cumpla con los siguientes requisitos:
>
> 1. El derecho es adquirido válidamente y con arreglo a la ley en un negocio intervivos, de buena fe y a título oneroso de persona que en el Registro aparece con facultad para transmitirlo, y que ha sido inscrito.
>
> 2. La adquisición se efectúa basado en un Registro inexacto por causas que no resultan clara y expresamente del propio Registro o por existir sobre la finca acciones o títulos de dominio o de otros derechos reales que no están debidamente inscritos.
>
> Ha de entenderse por Registro los asientos relativos a una finca o derecho, no extinguidos según lo dispuesto en esta Ley, que se refieran a cargas y gravámenes o a derechos que no sean del que transfiere o grava, además del asiento que publica el derecho del transmitente.
>
> La buena fe del tercero se presume siempre que haya actuado con una mínima dosis de diligencia y mientras no se pruebe que al adquirir conocía la falta de exactitud del Registro.
>
> El adquirente a título gratuito sólo gozará de la protección registral que corresponde a sus causantes o transferentes.

> Los derechos meramente mencionados o la indebida constancia de obligaciones no afectarán a tercero. 30 LPRA sec. 6050.

El precitado Artículo denota los requisitos que todo tercero registral debe satisfacer, de modo que pueda ser considerado como tal y quede amparado por la publicidad registral. De otra parte, nuestra jurisprudencia interpretativa ha descrito aún más estos requisitos. En *Banco Santander v. Rosario Cirino*, supra, págs. 604-609, el Tribunal Supremo de Puerto Rico identificó y definió cada uno de los requisitos que el Artículo 35 de la Ley Hipotecaria, *supra*, impone a aquellos que reclamen la fe pública registral, los cuales se resumen como sigue:

> Deberá ser un tercero civil que de buena fe y a título oneroso, en un negocio intervivos válido, adquiera un derecho real inmobiliario inscrito de persona que en el Registro aparezca con facultades para transmitirle, en función de un Registro inexacto, sin que consten clara y expresamente las causas de la inexactitud ni concurra alguna de las excepciones a la aplicación de la fe pública registral y que, a su vez, haya inscrito su adquisición. *Íd.*, págs. 603-604.

Por inexactitud, se entiende todo desacuerdo que exista entre el Registro y la realidad jurídica extrarregistral. Art. 211 de la Ley Hipotecaria, 30 LPRA sec. 6351. Luego, al definir la figura del tercero hipotecario, el Tribunal Supremo de Puerto Rico expresó lo siguiente:

> [E]l tercero hipotecario no es perfecto sinónimo del tercero adquirente civil. 'El tercero hipotecario es un tercer adquirente por negocio jurídico de un derecho real inmobiliario inscrito. Adquirir por negocio jurídico es circunstancia común que asimila al tercero hipotecario con el tercer adquirente civil o general, pero aquél sólo puede ser un adquirente de derecho real inmobiliario inscrito y, por tanto, relativo a finca inmobiliario en el Registro, mientras que el segundo es

indiferente que lo que adquiera sea un derecho real inmobiliario inscrito o no inscrito, o un bien mueble o un derecho personal o de crédito.' *Banco Santander v. Rosario Cirino*, supra, pág. 605, citando a Roca Sastre, *op. cit.,* pág. 618.20

En relación con la buena fe del tercero registral, este principio se extiende a toda la protección registral, por lo que, "[s]i no hay buena fe no hay protección." L. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 2da. ed., Jurídica Editores, 2002, pág. 126. Así, el requisito de la buena fe en materia registral se ha definido como el "desconocimiento por el tercer adquirente, en el momento de la adquisición, de la inexactitud registral y de los vicios que pueden anular, rescindir, resolver o revocar la titularidad del transferente." *Mundo v. Fuster*, supra, pág. 376.

El requisito de buena fe sólo lo tiene que cumplir el tercero adquiriente, no el transferente. Además, el cumplimiento de dicho requisito deberá velarse en el momento en que "queda concluso el negocio jurídico de adquisición por el tercero." *Santander v. Rosario Cirino*, supra, pág. 607, citando a Roca Sastre, *op. cit.*, pág. 695. El Artículo 35 de la Ley Hipotecaria, *supra*, dispone que se presume la buena fe del tercer adquirente. Por tanto, quien impugna la presunción de tercero protegido tiene la carga de probar la mala fe del adquirente. Es decir, deberá probar que el adquiriente "conoció la posesión de hecho de la finca, a título de dueño, por persona distinta de su transmitente, o que tuvo medios racionales y motivos suficientes para conocerla." *Santander v. Rosario Cirino*, supra, pág. 606.

La buena fe del tercero registral queda demostrada con "un mínimo grado de diligencia." *Santander v. Rosario Cirino*, supra. No obstante, "[s]i bien nuestro derecho requiere cierto grado de diligencia, no podemos exigirle a quien confía en la fe pública registral que posea un grado de conocimiento técnico-jurídico que le permita pasar juicio sobre la corrección de la calificación que de los documentos presentados para inscripción haya hecho el Registrador de la Propiedad." *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 558 (1991).

La jurisprudencia puertorriqueña exige también un grado de diligencia razonable a quien reclama la protección de sus derechos, con el objetivo de detectar cualquier defecto en el título de quien le transmite el derecho, es decir, para descubrir cualquier "inexactitud" en las constancias del Registro que pueda afectar su titularidad. *Banco de Santander v. Rosario Cirino*, supra, págs. 605-607; *Mundo v. Fuster*, supra, pág. 376. Dicho de otro modo, además de la falta de conocimiento del defecto que produce la nulidad o la revocación del título de su transferente, el tercero no puede haber tenido medios racionales o motivos suficientes para conocerlo. *Íd*.

Para precisar lo dicho, el Artículo 211 de la Ley Hipotecaria, 30 LPRA sec. 6351, define como inexactitud del Registro "todo desacuerdo que en orden a los derechos inscribibles exista entre aquél y la realidad jurídica extraregistral". Así, el Registro es inexacto:

> 1.Cuando el derecho existe en la realidad jurídica extraregistral al momento de la adquisición del tercero, pero:

a) al inscribir se ha incurrido en error de expresión en el asunto;

b) no ha llegado a inscribirse;

c) fue inscrito, pero su asiento ha sido cancelado.

2. Cuando el derecho consta inscrito, pero no existía en la realidad jurídica extraregistral al momento de verificarse la adquisición del tercero:

a) no ha existido nunca el derecho por falsedad, nulidad u otro defecto del título inscrito;

b) existió, pero al momento de la adquisición ya se había extinguido por haber operado la anulación, resolución, rescisión, revocación, caducidad, renuncia, prescripción, liberación, expropiación, confiscación, etc.;

c) existía al momento de la adquisición, pero estaba amenazado de extinción por causa de anulabilidad o de resolución, rescisión o revocación sin contar explícitamente en el Registro. L.R. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño,* 2da ed., Jurídica Editores 2002, págs. 100-101.

Como vemos, la nulidad de un negocio que produjo una primera inscripción puede crear inexactitud en las constancias del Registro, pues estas hacen ver como válido un negocio que no lo es. Ahora bien, el conocimiento de la inexactitud registral que tuvieran los transferentes o titulares anteriores no priva al tercero adquirente de su buena fe si él desconoce esa inexactitud al momento de la adquisición. Aún más, "el tercero recibe la protección de la buena fe registral, aun cuando se invalide el título del transferente, siempre que las causas de nulidad no surjan expresamente del registro." *Delgado v. Rivera*, 173 DPR 150, 169 (2008).

Recordemos que "[l]a buena fe es requisito que solo debe concurrir en el tercer adquirente; en cuanto al

transferente es irrelevante su buena o mala fe. […] La buena o mala fe del transferente no influye en el tercer adquirente." Roca Sastre, *op. cit.*, pág. 371

### III.

En el caso de autos, el señor Santiago nos solicita que determinemos que el foro primario cometió los cuatro (4) señalamientos de error planteados en el recurso, por los cuales amerita que se revoque la *Sentencia* apelada. No obstante, según *Meléndez González et al. v. M. Cuebas*, supra, el primer paso del estándar de revisión de las solicitudes de sentencia sumaria es revisar el expediente *de novo* de la forma más favorable para la parte que se opuso a la solicitud de sentencia sumaria, y aplicar los mismos criterios de la Regla 36 de Procedimiento Civil, *supra*. En esa misma línea, se exige que revisemos que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, supra. *Meléndez González et al. v. M. Cuebas*, supra, pág. 118.

De una lectura cuidadosa del expediente, determinamos que las mociones de sentencia sumaria instadas por las partes cumplieron esencialmente los requerimientos de la aludida regla, particularmente en lo concerniente a enumerar una lista de hechos incontrovertidos, y anejando la documentación que los sostienen. No obstante, determinamos que la oposición presentada por la señora Alvelo no cumplió con la Regla 36.3(b) de Procedimiento Civil, *supra*. En lo esencial, no hizo referencia a los hechos enumerados como incontrovertidos por la parte apelante de la moción dispositiva, como tampoco incluyó evidencia documental alguna para impugnarlos, ni para sostener los hechos que

propuso como incontrovertidos. Mientras que, el señor Santiago cumplió con los requisitos de forma en su moción en oposición a la solicitud instada por la señora Alvelo. Sin embargo, la falta de cumplimiento con la Reglas de Procedimiento Civil no implica una concesión automática de una solicitud de sentencia sumaria, puesto que, la concesión de una solicitud de sentencia sumaria ocurrirá cuando en derecho así proceda.

Cumplido este mandato, debemos ahora evaluar *de novo* los reclamos presentados en el caso de epígrafe a los fines de valorar si efectivamente existen controversias de hechos medulares que impiden resolver por la vía sumaria el pleito, así como para determinar si la aplicación del derecho efectuada por el foro primario fue correcta.

## A.

Mediante su primer señalamiento de error, el apelante alega que incidió el foro primario al dictar sentencia sumaria, a pesar de haber controversia de hechos esenciales y pertinentes. En síntesis, esboza que es un hecho medular en controversia la anotación de embargo al ser incompatible con la anotación del hogar seguro, por lo que, el embargo era improcedente y contrario a derecho. Asimismo, sostiene que hay controversia sobre la *Orden y Mandamiento* expedido luego de la compraventa, puesto que nunca le notificaron que esta sería anulada. Por ello, procede revocar la sentencia y devolver el caso para la celebración de una vista en sus méritos.

Por su parte, los recurridos (el matrimonio Batista Correa y la señora Alvelo), arguyen que el propio apelante en el *Informe de Conferencia con Antelación al*

*Juicio* solicitó el caso se sometiera por sentencia sumaria o memorando de derecho, puesto que no habían hechos esenciales en controversia. Sin embargo, sostienen que debido a que la sentencia no le fue favorable al señor Santiago, éste a manera acomodaticia, cambio de opinión y alega que sí hay hechos esenciales en controversia. Asimismo, señalan que el foro *a quo* dio fiel cumplimiento a la Regla 36.3 de Procedimiento Civil y la *Sentencia* apelada fue dictada correctamente.

Tras un análisis detenido del expediente, así como de la normativa aplicable, concluimos que no existen controversias de hechos materiales que hagan improcedente, como cuestión de derecho, dictar sentencia sumaria en este caso. Nótese que el señor Santiago sostiene que la anotación de embargo era incompatible con la anotación del hogar seguro, por lo que, era improcedente. Asimismo, alegó que había controversia al declararse anulada la compraventa, puesto que nunca fue notificado de las órdenes y mandamientos expedidos en el caso KDP2012-0472. Sin embargo, dichas alegaciones no son correctas toda vez que, el tracto registral y la mención de los gravámenes en la escritura de compraventa constituyen hechos incontrovertidos que permiten la adjudicación del derecho de forma sumaria. Las alegaciones del apelante sobre la validez extrínseca del embargo o procesos de subasta posteriores no alteran la realidad jurídica de que, al momento de la adquisición, el inmueble estaba gravado. Por ello, es innecesaria la celebración de un juicio para dirimir cuestiones de derecho. Consecuentemente, el foro primario actuó correctamente al utilizar el mecanismo de sentencia

sumaria para adjudicar de forma rápida y económica la controversia.

**B.**

En su segundo señalamiento de error, el apelante arguye que incidió el foro primario al concluir que no reunía los requisitos de tercero registral de buena fe. Sostiene que, no sabía que al señor Colón lo habían demandado, por lo que, al comprar el apartamento se convirtió en tercero registral de buena fe. Resalta que, la propiedad tenía una anotación de Hogar Seguro y no existían impedimentos para comprarla. Añadió que, los gravámenes anotados en la escritura habían sido cancelados, sin afectar la compraventa. Por lo tanto, alega que la *Orden y Mandamiento* que autorizó la subasta no debía cambiar su situación de tercero registral de buena fe.

Los recurridos, por su parte, plantean que el apelante tenía conocimiento que el inmueble en controversia tenía un gravamen inscrito, pues figuraba el embargo solicitado, incluso surgía de la propia escritura de compraventa. La señora Alvelo, menciona que no hay controversia en que el señor Santiago adquirió a título oneroso de la persona que figuraba con facultad para transmitir, no obstante, la controversia era si tenía buena fe. Los recurridos, insisten que el apelante sabía del embargo, lo reconoció y fue advertido en la escritura. Por ello, al señor Santiago no le cobija la presunción de buena fe de un tercero registral, pues no actuó con una mínima dosis de diligencia y al adquirir la propiedad conocía la falta de exactitud del Registro.

En cuanto al segundo señalamiento de error, concluimos que el foro primario aplicó correctamente las

disposiciones del Artículo 35 de la Ley Hipotecaria. La figura del tercero registral de buena fe tiene como propósito proteger a aquel adquiriente que, confiando en las constancias del Registro, adquiere un derecho de quien aparece con facultad para transmitirlo. Sin embargo, para que esta protección se active, la Ley exige la concurrencia de varios otros requisitos, siendo la buena fe el elemento subjetivo indispensable.

En nuestro ordenamiento jurídico, la buena fe registral consiste en la ignorancia de los vicios que puedan afectar el título del que lo transmite o de la existencia de cargas que no aparezcan claramente inscritas. *Mundo v. Fuster*, supra, pág. 376. En el caso de epígrafe, surge de la propia *Escritura de Compraventa*, que el apelante tenía conocimiento expreso de los gravámenes que pesaban sobre el inmueble. La fe pública protege a quien ignora la existencia de cargas extraregistrales, no a quien adquiere una propiedad con un embargo judicial inscrito y advertido por el notario. El rango preferente del embargo inscrito el 8 de febrero de 2022 es oponible al apelante, quien se subrogó en la posición jurídica del señor Colón respecto al inmueble.

A su vez, el argumento del apelante de que compró de "buena fe" bajo la creencia de que el embargo era nulo por la anotación del Hogar Seguro es una conclusión errónea, que no restaura su condición de tercero. La buena fe registral exige un desconocimiento del hecho del gravamen, no una interpretación favorable sobre su validez jurídica. Por lo que, al conocer la existencia del pleito y del embargo, el apelante asumió el riesgo de la determinación judicial.

## C.

En cuanto a su tercer señalamiento de error, el señor Santiago esboza que incidió el foro *a quo* al no permitir le enmienda a la demanda para incluir al señor Colón como parte indispensable. Señala que, el señor Colón era el dueño del apartamento en controversia, y ambas partes entendían que era necesario traerlo al pleito, sin embargo, el foro primario denegó su solicitud de enmienda a la demanda.

Alegan los recurridos, que el apelante tuvo amplias oportunidades para enmendar la demanda a tiempo, sin embargo, decidió solamente incluir a la señora Alvelo, puesto que, había expresado que al señor Colón no se le vería afectado ningún derecho. A su vez, alegan que independientemente de quien sea el titular, los derechos y gravámenes anotados persiguen al inmueble y todo nuevo adquiriente se subroga en la posición del transmitente. Por lo tanto, la ausencia del señor Colón no impedía la adjudicación del caso, ni lo convertía en parte indispensable.

En cuanto al tercer señalamiento de error, no incidió el foro apelado al denegar la enmienda para incluir como parte indispensable al señor Colón.

La presencia del señor Colón no era un requisito jurisdiccional para adjudicar la controversia principal. Al tratase de una acción sobre derecho real de embargo que persigue al inmueble, el foro primario podía determinar la falta de buena fe registral del apelante basándose únicamente en el tracto registral y la escritura de compraventa, independientemente de la participación del titular anterior. Por lo tanto, la

denegación de la enmienda no causó indefensión ni vició la facultad del tribunal para dictar la sentencia.

**D.**

En su último señalamiento de error, el apelante sostiene que incidió el foro primario al darle validez a un embargo y subasta contra la propiedad inscrita a su nombre cuando no fue parte en el pleito donde se dictó la *Orden y Mandamiento* para celebrar una subasta. Reitera que, la subasta fue ilegal debido a que, él siendo dueño de la propiedad en controversia, no fue parte en el caso KDP2012-0472, ni fue notificado de las órdenes emitidas.

Por su parte, los recurridos arguyen que el embargo fue presentado el 12 de marzo de 2021 e inscrito el 8 de febrero de 2022. Mientras que, la escritura de compraventa fue el 11 de mayo de 2022. Por ello, insisten que para la fecha en que fue otorga la escritura el embargo llevaba más de un año de presentado y más de tres meses inscrito en el Registro. Así pues, mencionan que, si el apelante pretendía realizar una transacción registral con relación a la propiedad sujeta al embargo, se le imputa el conocimiento de que sus derechos estarían sujetos al embargo sobre la propiedad. Añaden que, para la fecha de celebración de la subasta, el apelante había presentado la demanda de epígrafe, por lo que, tuvo oportunidad de solicitar intervención en el caso de daños y perjuicios (KDP2012-0472), y optó por no hacerlo.

Finalmente, este Tribunal concluye que no erró el foro primario al validar el proceso de subasta, a pesar de que el apelante no fue parte en el caso KDP2012-0472.

Quien adquiere un bien inmueble con un embargo anotado en el Registro de la Propiedad se somete a los resultados de dicha adjudicación. El señor Santiago, al tener conocimiento del embargo y del caso KDP2012-0472, según consta en su escritura y por el hecho de haber instado la presente acción antes de la fecha de la subasta, tenía la carga de proteger su interés.

Por lo tanto, conforme la Regla 21 de Procedimiento Civil, el apelante pudo y debió solicitar su intervención en el caso de daños y perjuicios (KDP2012-0472) para defender su título o reclamar cualquier derecho bajo el Artículo 49 de la Ley Hipotecaria, 30 LPRA sec. 6069.[22] Su inacción procesal no puede traducirse ahora como una falta del debido proceso por parte del tribunal o de los recurridos, ya que el Registro le había advertido de la contingencia judicial que pesaba sobre el inmueble en controversia.

**IV.**

Por los fundamentos antes expuestos, **CONFIRMAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[22] Artículo 49 – Enajenación o gravamen de inmuebles anotados preventivamente; registro; efectos. 30 LPRA sec. 6069.

Los títulos en que se enajenen o graven bienes inmuebles sujetos a anotación preventiva podrán inscribirse sin perjuicio del derecho de la persona a cuyo favor se haya hecho la anotación, siempre que su enajenación no esté prohibida o, estándolo, se trate de títulos de transmisión de dominio otorgados con anterioridad a la anotación de la prohibición de enajenar.

Si antes que el acreedor haga efectivo su crédito, el bien o derecho anotado pasa a manos de un tercer poseedor, y éste acredita su título, podrá solicitar la intervención en el pleito, sin paralizar el curso del procedimiento. El tribunal dispondrá sobre la subrogación y en el lugar y grado del deudor, pero solo en cuanto a los efectos de la ejecución del bien o derecho anotado preventivamente. […]